**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE___OCT 3 1 2013

_____
for CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on Oct 31, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 86633-3 |
| Respondent, | ) | |
| v. | ) | En Banc |
| BRANDON GENE OLLIVIER, | ) | |
| Petitioner. | ) | Filed ___OCT 3 1 2013 |

MADSEN, C.J.—Brandon Ollivier contends that his rights to a speedy trial under CrR 3.3, the Sixth Amendment to the United States Constitution, and article I, section 22 of the Washington State Constitution were violated by delay in bringing him to trial. He also maintains that evidence obtained in a search of his apartment must be suppressed because of misrepresentations and other defects in the affidavit in support of probable cause to issue the warrant, and CrR 2.3(d) was violated because he was not presented with a copy of the search warrant prior to commencement of the search. We conclude that the delay in bringing Ollivier to trial did not violate speedy trial rights when defendant's own counsel requested the continuances causing the delay and no claim of ineffective counsel is made related to those continuances, that probable cause for the

search warrant was sufficiently established by qualifying information in the affidavit, and no violation of CrR 2.3(d) occurred because a copy of the search warrant was posted upon seizure of property pursuant to the warrant. We affirm the Court of Appeals' decision upholding Ollivier's conviction for possession of child pornography.

FACTS

In March 2007, Brandon Ollivier, a registered sex offender, was living with roommates who also were registered sex offenders. When one of the roommates, Eugene Anderson, was arrested for a violation of community custody, he told his Community Corrections Officer (CCO) on March 8, 2007, that Ollivier had shown him child pornography on Ollivier's computer in their apartment. After this information was relayed to King County Sheriff's Office Detective Dena Saario, she took a taped statement from Anderson. Anderson told Saario that Ollivier had shown him a video of a young girl and boy having sexual relations. He also stated that Ollivier had shown him photographs of young girls about nine years old who were dressed but posed provocatively. In addition, Anderson told Saario that Ollivier kept a locked red box that contained pornography, including "*Playboy*" and "*Barely Legal*" magazines.

Detective Saario prepared an affidavit to obtain a search warrant for the apartment. Among other things, she incorrectly stated that Anderson informed her that the red box contained photographs of unclothed children in sexually explicit poses. The warrant was issued and on April 5, 2007, it was executed. Ollivier was the only one in the apartment when detectives arrived to search it. During the search, detectives seized two desktop

computers, one laptop computer, several compact disks, USB (Uniform Serial Bus) drives, and other storage media. At the conclusion of the search, Detective Saario posted a copy of the warrant on a bookcase in the apartment.

A detective who initially examined the computer images concluded they contained over 14,000 images of child pornography and about 100 video files of child pornography. The vast majority were images of children under 15 years of age who were purposefully posed to expose their genitals and the same children in various sex acts with other children and adults, as well as other sex acts.

On April 13, 2007, Ollivier was arrested and charged with possession of depictions of minors engaged in sexually explicit activity. On April 18, 2007, he was arraigned, with an initial speedy trial expiration date of June 29, 2007. Trial began on March 9, 2009, following 22 continuances. Defense counsel sought most of the continuances to allow time for investigation, to obtain expert review of computer content, to obtain discovery material from the Washington State Department of Corrections and the King County Sheriff's Office, and because of a new investigator on the case. Some of the requested continuances mentioned circumstances involving the State and some motions were joined by the State. In addition, shortly after executing the search warrant, Detective Saario was investigated for misconduct and she resigned. A continuance was requested to permit time to obtain information about the investigation into her conduct. Ollivier did not object to the first two of these continuances, but he did object to nearly all of the rest.

King County Detective Barry Walden conducted a forensic search of the computers. It is undisputed child pornography was found. Among other things, Walden found a file folder on a computer registered to "Brandon" (Ollivier's first name) in an unusual location. This computer contained hundreds of images of child pornography and numerous video files, including four video files showing young girls appearing to be ages 5, 7, 7, and 12 in sexually explicit situations. Ollivier stipulated these videos satisfied the definition of child pornography and they were not shown to the jury.

Anderson testified at Ollivier's trial that he stayed with Ollivier one week before he was arrested on the community custody violation. He testified he never used the computer he saw in Ollivier's apartment, that he saw Ollivier use it daily, and that he never saw anyone else use it. He testified that Ollivier showed him child pornography on the computer. Another roommate, Daniel Whitson, testified on Ollivier's behalf that he (Whitson) had never seen Ollivier use the computer to view pornography.

Ollivier was convicted of one count possession of depictions of minors engaged in sexually explicit conduct[1] and was sentenced to a standard range sentence. He appealed. The Court of Appeals affirmed his conviction. *State v. Ollivier*, 161 Wn. App. 307, 254 P.3d 883 (2011).

---

[1] Ollivier was originally charged with additional counts, but the State agreed to dismissal of several counts in light of *State v. Sutherby*, 165 Wn.2d 870, 204 P.3d 916 (2009).

ANALYSIS

*Right to a Speedy Trial Under CrR 3.3*

Mr. Ollivier maintains that the time-for-trial rule in CrR 3.3 was violated when the trial court granted 22 continuances without, he asserts, making sufficient inquiry into the reasons for the delays. A trial court's decision to grant or deny a motion for a continuance is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *State v. Kenyon*, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009).

CrR 3.3 accords with the United States Supreme Court's determination that states can prescribe reasonable periods for commencement of trials consistent with constitutional standards. *Barker v. Wingo*, 407 U.S. 514, 524, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). While the rule has the purpose of ensuring that a defendant's constitutional right to a speedy trial is effectuated, complying with it does not necessarily mean that no constitutional violation occurs. *Kenyon*, 167 Wn.2d at 136; *see Barker*, 407 U.S. at 531 (noting that the balancing test the Court adopted for Sixth Amendment speedy trial purposes requires courts to consider the constitutional right on an ad hoc basis and no set time is constitutionally sufficient for all cases); *see State v. Iniguez*, 167 Wn.2d 273, 287, 217 P.3d 768 (2009) ("CrR 3.3 provides a framework for the disposition of criminal proceedings without establishing any constitutional standards").

Under CrR 3.3(b)(1)(i), an individual held in custody pending trial must be tried within 60 days of arraignment. Certain time periods are excluded from the computation

of time, including continuances granted by the trial court. CrR 3.3(e). CrR 3.3(f)(2) explains:

> On motion of the court or a party, the court may continue the trial date to a specified date when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense. The motion must be made before the time for trial has expired. The court must state on the record or in writing the reasons for the continuance.

CrR 3.3(f)(2) also provides that a motion for continuance "by or on behalf of any party waives that party's objection to the requested delay."

Here, Ollivier's own counsel sought the continuances about which he complains, and as the rule expressly provides, any objection is therefore waived.[2]

Ollivier contends, however, that the trial court did not state on the record as to each continuance that it was required in the administration of justice and that the defendant was not prejudiced. For example, Mr. Ollivier says as to the October 19, 2007 ruling that the court indicated the continuance was granted in the administration of justice but failed to comply with the requirement that the delay not prejudice the defendant. However, the order explains the reason for the continuance was that the time was needed for a defense expert to do work before trial. Implicit is the idea that if the expert lacked sufficient time to complete the work, the defense would suffer or be incompletely prepared.

---

[2] Under case law preceding the 2003 adoption of the last sentence in CrR 3.3(f)(2) that waives objections when defense counsel moves for a continuance, granting continuances over the defendant's objection to ensure that counsel was adequately prepared and provided effective representation was not an abuse of discretion. *State v. Campbell*, 103 Wn.2d 1, 15, 691 P.2d 929 (1984); *see State v. Finch*, 137 Wn.2d 792, 806, 975 P.2d 967 (1999).

Each order continuing the trial provides a reason for the continuance. In his opening brief in the Court of Appeals, Mr. Ollivier "concede[d] that any of the continuances, standing alone, would not be an abuse of discretion." Appellant's Opening Br. at 20 (emphasis omitted). This is a concession that each request for a continuance was a legitimate request for an extension of time to pursue matters in preparation of his defense and that the trial court properly granted the motions for continuances.

*State v. Saunders*, 153 Wn. App. 209, 220 P.3d 1238 (2009) and *Kenyon*, 167 Wn.2d 130, on which Ollivier heavily relies, do not compel a different conclusion. Neither involved a similar situation. In *Saunders*, three continuances at issue were granted that the Court of Appeals found to be unsupported by convincing and valid reasons.[3] Indeed, the continuances were granted to permit ongoing plea negotiations over the defendant's objection and contrary to his desire to go to trial. As the State points out in the present case, whether to plead guilty is an objective of representation controlled by the defendant and not a matter of trial strategy to achieve an objective. *See Faretta v. California*, 422 U.S. 806, 820, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). In contrast,

---

[3] The Court of Appeals summarized them as follows:
> Here, [the defendant] consistently resisted extending time for trial while he was incarcerated awaiting trial on his failure to register [as a sex offender] charges. The continuances granted on January 8, February 20, and March 18 are without adequate basis or reason articulated by the State or defense counsel. [The] defense counsel and the State either agreed to a continuance for further negotiations, contested by [the defendant], or relied on uninformed standby defense attorneys or assigned prosecutors to present contested orders—these standbys either did not know about the continuances or believed they were agreed continuances—and, when the trial court challenged them to state the basis of the requested continuances, they admitted they knew nothing substantive about the status of the case.

*Saunders*, 153 Wn. App at 220-21.

under CrR 3.3, counsel has authority to make binding decisions to seek continuances. *Saunders* is unlike Mr. Ollivier's case because here the continuances were sought to enable defense investigation and preparation for trial.

In *Kenyon*, charges were dismissed because the record failed to sufficiently document details showing that no judge was available to try the case, as required by precedent. *Kenyon* involves continuances for far different reasons than in Ollivier's case.[4]

In light of CrR 3.3(f)(2) and Mr. Ollivier's concession that individually the continuances were not an abuse of discretion, Mr. Ollivier's rule-based speedy trial right was not violated. We affirm the Court of Appeals on this issue. Because this conclusion does not resolve the constitutional issue, *see Iniguez*, 167 Wn.2d at 287, we next turn to the issue whether Mr. Ollivier's constitutional rights to a speedy trial were violated.

*Constitutional Rights Right to a Speedy Trial*

Ollivier contends that the Court of Appeals erroneously ruled that to show a violation of constitutional speedy trial rights, the defendant must establish actual prejudice to his ability to prepare a defense. He maintains that actual prejudice is not required before a violation of the right to a speedy trial can be found under the Sixth Amendment and article I, section 22 of the Washington State Constitution.

---

[4] Moreover, in *Kenyon* we noted that that "several continuances [were necessary] to prepare for trial, many of them against [the defendant's] wishes. But the continuances were deemed necessary to adequately prepare for [the defendant's] trial." *Kenyon*, 167 Wn.2d at 138. We thus acknowledged that time needed to prepare is a legitimate reason for continuances requested by counsel, even over the defendant's objections.

Mr. Olivier's argument highlights the need for us to clarify our analysis in *Iniguez* concerning when a showing of actual prejudice is required. As we explain below, and contrary to Mr. Ollivier's contention, the defendant ordinarily must establish actual prejudice to the ability to prepare a defense. The exception is when the delay is so lengthy that prejudice to the ability to defend must be conclusively presumed.

Our review is de novo. *Iniguez*, 167 Wn.2d at 280. In *Iniguez*, we determined that the analysis for speedy trial rights under article I, section 22 is substantially the same as the Sixth Amendment analysis and that the state provision does not afford greater rights to the defendant. *Iniguez*, 167 Wn.2d at 289.[5] Like the Sixth Amendment speedy trial right, the state right is "'consistent with delays'" and subject to the circumstances. *Barker*, 407 U.S. at 522 (quoting *Beavers v. Haubert*, 198 U.S. 77, 87, 25 S. Ct. 573, 49 L. Ed. 950 (1905)). Accordingly, the right is not quantified, does not depend upon whether the defendant makes a specific request, and does not arise pursuant to some inflexible rule. *Id*. at 522-25.

We use the balancing test set out in *Barker* to determine whether a constitutional violation has occurred. *Iniguez*, 167 Wn.2d at 292. Because the state right is substantially the same as the federal right and we employ the same balancing test that was adopted by the United States Supreme Court, federal case law concerning the Sixth Amendment right is highly relevant to application of the state constitutional provision in

---

[5] The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. amend. VI. Article I, section 22 of the Washington State Constitution similarly provides that "[i]n criminal prosecutions the accused shall have the right . . . to have a speedy public trial."

a given situation. *Id.* at 282; *see also State v. Fortune*, 128 Wn.2d 464, 474-75, 909 P.2d 930 (1996) (federal cases can provide guidance in interpreting the state constitution).

The analysis is fact-specific and "'necessarily dependent upon the peculiar circumstances of the case.'" *Iniguez*, 167 Wn.2d at 288, 292 (quoting *Barker*, 407 U.S. at 530-31). "[T]he conduct of both the prosecution and the defendant are weighed." *Barker*, 407 U.S. at 529, 530. Among the nonexclusive factors to be considered are the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. None of these factors is sufficient or necessary to a violation. *Iniguez*, 167 Wn.2d at 283 (citing *Barker*, 407 U.S. at 533). But they assist in determining whether a particular defendant has been denied the right to a speedy trial.

*Threshold Showing of Presumptively Prejudicial Delay*

Analysis of the length of delay entails a double inquiry. *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). In order to trigger the speedy-trial analysis, "an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay" because, "by definition," the accused "cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Id.* at 651-52 (quoting *Barker*, 407 U.S. at 530-31). Then, if this showing is made, a court has to consider, "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* at

652. Thus, "the length of the delay is both the trigger for analysis and one of the factors to be considered." *United States v. Colombo*, 852 F.2d 19, 24 (1st Cir. 1988).

The more than eight-year delay in *Doggett* was clearly sufficient to trigger the speedy trial inquiry. The Court also noted in *Doggett* that while dependent upon the nature of the charges, lower courts had in general found presumptively prejudicial delay at least at the point at which it approaches one year. *Doggett*, 505 U.S. at 652 n.1. In *Iniguez*, we found presumptive delay triggering the *Barker* analysis where the more than eight-month delay was substantial and the charges were not complex.

In Mr. Ollivier's case, the State concedes, and we agree, that the delay was presumptively prejudicial as a threshold matter. This does not mean that the right to a speedy trial has been violated, but rather that the 23-month delay is sufficient to trigger the *Barker* analysis. We next consider the *Barker* factors, noting that Ollivier has limited his arguments to these factors and recognizing that although we generally examine each in order, they are interrelated.

*Length of Delay*

The first of the *Barker* factors is the length of the delay. Ollivier maintains that the length of delay weighs in his favor particularly because, he claims, it was not reasonably necessary. He also points out he spent nearly the full period incarcerated and that his counsel had told the court that she had never had a case with such a long delay.

Initially, in numerous cases courts have not regarded delay as exceptionally long where the delay was as long as or longer than here, particularly when the delay was

attributable to the defense. *E.g., United States v. Lane*, 561 F.2d 1075 (2d Cir. 1977) (58 months, much attributable to repeated requests by the defense for continuances); *Gattis v. Snyder*, 278 F.3d 222 (3d Cir. 2002) (28-month delay, all of which was attributable to the defendant); *United States v. Hills*, 618 F.3d 619, 630-31 (7th Cir. 2010) (two-year delay, most of which was attributable to the defense); *United States v. Porchay*, 651 F.3d 930, 940 (8th Cir. 2011) (assuming 39-month delay was presumptively prejudicial, no Sixth Amendment violation; "much of the delay . . . was attributable to [defendant's] own actions" where "[s]he filed well over fifty documents during the nearly three years she was under indictment, including motions which required responses and hearings, notices of interlocutory appeal, and written motions for continuance"); *United States v. King*, 483 F.3d 969 (9th Cir. 2007) (21-month delay did not violate the Sixth Amendment where defense obtained numerous continuances, case was complex, and defendant obtained new counsel halfway through proceedings); *United States v. Larson*, 627 F.3d 1198, 1209-10 (10th Cir. 2010) (31-month delay did not violate Sixth Amendment in case that was not unduly complicated; second factor weighed heavily against the defendant where every continuance was attributable to the defendant).[6]

---

[6] *See also United States v. Howard*, 443 Fed. App'x 596, 599 (2d Cir. 2011) (unpublished) (43-month delay did not violate Sixth Amendment where "a significant portion of the delay in [the defendant's trial] was attributable to his own pretrial motions as well as ends-of-justice continuances that [the defendant] did not oppose"); *United States v. Taylor*, 489 Fed. App'x 34 (6th Cir. 2012) (unpublished) (22-month delay did not violate Sixth Amendment where delay was due to case's complexity and defendants' motions and requested continuances); *United States v. Flowers*, 476 Fed. App'x 55 (6th Cir. 2012) (unpublished) (no Sixth Amendment violation where much of the 904-day delay was attributed to the defendant's actions in changing counsel and seeking 21 continuances); *Cejas v. Blanas*, 366 Fed. App'x 763 (9th Cir. 2010) (unpublished) (38-month delay did not violate the Sixth Amendment where the majority of the

Contrary to Ollivier's claim, we do not agree that this was a case where the delay was highly disproportionate to the complexity of the issues and counsel's need for preparation. In fact, contrary to Ollivier's claim, one of the judges who granted continuance requests commented on the complexity of the issues. Counsel had to obtain information in connection with use of the computers in the shared residence and as the State suggests, forensic computer analysis can be complex and tedious. We have previously encountered the complexity associated with experts in relation to computers

---

delay was attributable to defendant, whose counsel requested continuances comprising about half of the delay and also consented to the prosecution's requests for continuances); *Locke v. Dillman*, 915 F. Supp. 2d 670 (E.D. Pa. 2013) (832-day delay did not violate the Sixth Amendment speedy trial right; 503 days of the delay were due to defense counsel's requests and another 329 days were due to congested court dockets and judicial delay); *United States v. Goss*, 646 F. Supp. 2d 137 (D.D.C. 2009) (4-year-5-month delay did not violate Sixth Amendment where delay primarily resulted from the defendant impeding the government's effort to provide him with recordings that he had requested and from defendant's requesting and obtaining new counsel four times); *State v. Jones*, 35 So. 3d 644 (Ala. Crim. App. 2009) (more than 30-month delay did not violate Sixth Amendment); *Sechler v. State*, 316 Ga. App. 675, 730 S.E.2d 142 (2012) (44-month delay did not violate the Sixth Amendment where the defendant requested transfer to another court and the defense made numerous pretrial motions and requests for continuances); *People v. O'Quinn*, 339 Ill. App. 3d 347, 791 N.E.2d 1066 (2003) (3-and-1/2 year delay did not violate the Sixth Amendment where the defendant obtained all 28 of the continuances that were granted); *Eguia v. State*, 468 N.E.2d 559 (Ind. Ct. App. 1984) (over 3-year delay, responsibility for most of which was with the defendant, did not violate the Sixth Amendment); *Dickerson v. Commonwealth*, 278 S.W.3d 145 (Ky. 2009) (23-month delay did not violate Sixth Amendment); *State v. Wilkins*, 11-1395 (La. App. 3 Cir. 6/20/12), 94 So. 3d 983 (2,294-day delay did not violate Sixth Amendment where delay was largely attributed to the defendant's pretrial motions); *State v. Uffelman*, 626 A.2d 340 (Me. 1993) (25-month-delay did not violate the Sixth Amendment; the great bulk of delay was attributable to the defendant); *People v. Bailey*, 101 Mich. App. 144, 300 N.W.2d 474 (1980) (24-month delay due in large part to defense); *Taylor v. State*, 672 So. 2d 1246 (Miss. 1996) (1027-day delay, much of which was attributable to the defense); *State v. Grooms*, 353 N.C. 50, 540 S.E.2d 713 (2000) (3-year-326-day delay, with much of the delay attributable to the defendant); *Commonwealth v. Tilley*, 528 Pa. 125, 595 A.2d 575 (1991) (22-month delay, mostly attributable to the defendant's continuances); *Prihoda v. State*, 352 S.W.3d 796 (Tex. App. 2011) (3-year delay did not violate Sixth Amendment); *State v. Leighton*, 2000 WI App. 156, 237 Wis. 2d 709, 616 N.W.2d 126 (2000) (26-month delay, largely the result of defense requests for time to prepare did not violate the Sixth Amendment; the record strongly indicated defendant did not want a speedy trial).

and child pornography. *State v. Grenning*, 169 Wn.2d 47, 234 P.3d 169 (2010); *State v. Boyd*, 160 Wn.2d 424, 158 P.3d 54 (2007); *State v. Luther*, 157 Wn.2d 63, 134 P.3d 205 (2006).

In addition, some of the delay in this case was attributed to discovery from the King County Sheriff's Office in connection with preparation of the defense challenge to the sufficiency of the search warrant. Counsel's pursuit of this discovery was highly appropriate, obviously time-consuming, and required repeated efforts. And although the sheriff's office is a state entity, it was not involved in the trial prosecution. Moreover, as discovery proceeded, voluminous amounts of material were produced, necessitating additional time to investigate and review.

Nearly all of the continuances were sought so that defense counsel could be prepared to defend. This is an extremely important aspect of the balancing and leads us to conclude that the length of delay was reasonably necessary for defense preparation and weighs against the defendant.

*Reason for Delay*

The second *Barker* factor is the reason for the delay. *Barker*, 407 U.S. at 531; *Iniguez*, 167 Wn.2d at 294. When the delay is due to trial preparation needs, as in this case, the first and second factors are closely related.

The reason for the delay is "'the focal inquiry,'" *United States v. Santiago–Becerril*, 130 F.3d 11, 22 (1st Cir. 1997) (quoting *United States v. Sears, Roebuck & Co.*,

877 F.2d 734, 739 (9th Cir. 1989)), "[t]he flag all litigants seek to capture," *United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S. Ct. 648, 88 L. Ed. 2d 640 (1986).

To begin, the United States Supreme Court reminds us that "pretrial delay is often both inevitable and wholly justifiable." *Doggett*, 505 U.S. at 656. Thus, careful assessment of the reasons for the delay is necessary to sort the legitimate or neutral reasons for delay from improper reasons. A court looks to each party's responsibility for the delay, and different weights are assigned to delay, primarily related to blameworthiness and the impact of the delay on defendant's right to a fair trial. *Barker*, 407 U.S. at 531. At one end of the spectrum is the situation where the defendant requests or agrees to the delay and is therefore "is deemed to have waived his speedy trial rights as long as the waiver is knowing and voluntary." *Iniguez*, 167 Wn.2d at 284 (citing *Barker*, 407 U.S. at 529). At the other end of the spectrum, if the government deliberately delays the trial to frustrate the defense, this conduct will be weighted heavily against the State. *Barker*, 407 U.S. at 531. Moving more toward the center, if the delay is due to the government's negligence or overcrowded courts, the delay is still weighted against the government, but to a lesser extent. *Id.* But if the government has a valid reason for the delay, such as a missing witness, then the valid reason may justify a reasonable delay. *Id.*

We conclude that the second factor weighs more in favor of the State than the defense. Delay caused by defense counsel is chargeable to the defendant. *Vermont v. Brillon*, ___ U.S. ___, 129 S. Ct. 1283, 1290-91, 173 L. Ed. 2d 231 (2009); *United States v. Gearhart*, 576 F.3d 459, 463 (7th Cir. 2009) ("[w]here a defendant seeks and obtains a

15

continuance, the defendant himself is responsible for the resulting delay"); *United States v. Gould*, 672 F.3d 930, 937 (10th Cir. 2012) (delay of 1388 days; a "'[d]elay[ ] attributable to the defendant do[es] not weigh against the government'" (quoting *United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006))); *United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009) ("[d]elays attributable to the defendant do not weigh in favor of a Sixth Amendment violation"; "of the 671 days between the filing of [the] indictment and the start of his trial, 423 were attributable to motions filed by [the defendant]"; "this factor weighs heavily against" the defendant); *United States v. Garraud*, 434 Fed. App'x 132, 137 (3d Cir. 2011) (unpublished) (no violation of Sixth Amendment from 22-month delay because the defendant "was the cause for any delay in his trial"; included in this time was an extension of time requested by the defendant for discovery); *United States v. Gates*, 650 F. Supp. 2d 81, 87 (D. Me. 2009); *United States v. Hendrickson*, 460 Fed. App'x 516, 520 (6th Cir. 2012) (unpublished); *United States. v. Woodley*, 484 Fed. App'x 310, 319, 2012 WL 2299534, 7 (11th Cir. 2012) (unpublished) (22-month delay attributable to defendant who filed over 40 pretrial motions and the district court conducted multiple hearings and proceedings); *Locke v. Dittman*, 915 F. Supp. 2d 670 (E.D. Pa. 2013) (where reason for delay originates with the defendant or his counsel, the delay is not considered for purposes of determining whether constitutional right to speedy trial is violated; 503-days delay attributable to defense counsel's requests); *In re Personal Restraint of Benn*, 134 Wn.2d 868, 952 P.2d 116 (1998) (defendant charged in May 1988 and brought to trial in March 1990; virtually the entire

delay was attributable to continuances that were requested by the defense or agreed to by the defense and there was no evidence of prejudice due to the delay; no constitutional violation); *Cook v. State*, 810 N.E.2d 1064, 1068 (Ind. 2004).

In *Brillon*, 129 S. Ct. at 1290-91, the Court explained:

> [D]elay caused by the defense weighs against the defendant . . . . Because "the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation," delay caused by the defendant's counsel is also charged against the defendant. *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). The same principle applies whether counsel is privately retained or publicly assigned, for "[o]nce a lawyer has undertaken the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serving in a legal aid or defender program." *Polk County v. Dodson*, 454 U.S. 312, 318, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981).

(Footnote and internal quotation marks omitted.)[7] The Court concluded that the defendant's counsels' "'inability or unwillingness . . . to move the case forward' may not be attributed to the State simply because they are assigned counsel." *Brillon*, 129 S. Ct. at 1292 (quoting *State v. Brillon*, 183 Vt. 475, 955 A.2d 1108, 1121 (2008)).

Nearly all of the continuances in this case were sought to accommodate defense counsel's need to prepare for trial. Moreover, while it is true that the defendant objected to most of these continuances, it does not follow that granting them violated his right to a speedy trial.

Many courts hold that even where continuances are sought over the defendant's objection, delay caused by the defendant's counsel is charged against the defendant under

---

[7] The Court added that the rule is not absolute, and "[d]elay resulting from a systemic 'breakdown in the public defender system,' . . . could be charged to the State." *Brillon*, 129 S. Ct. at 1292 (quoting 955 A.2d at 1111).

the *Barker* balancing test if the continuances were sought in order to provide professional assistance in the defendant's interests. *E.g., Bergman v. Cates*, No. EDCV 12-00339-AG, 2012 WL 5328717 (C.D. Cal. Aug. 10, 2012 (unpublished); *Cox v. Warden*, No. 1:10-cv-117, 2011 WL 1980169, at *5 (S.D. Ohio Apr. 26, 2011) (unpublished); *State v. Ward*, 227 Kan. 663, 667, 608 P.2d 1351 (1980) (defendant objected to continuances and argued that timing of trial was a decision that must be left to the defendant; court disagreed, saying that "[t]he matter of preparation and date of the trial and the type of defense relied upon are clearly strategical and tactical decisions which require trained professional skill and judgment which must rest with the lawyer"; no violation of Sixth Amendment right to a speedy trial); *Taylor v. State*, 557 So. 2d 138, 141-42 (Fla. Dist. Ct. App. 1990) (noting tension between the right to speedy trial and the constitutional right to competent, prepared counsel; finding no violation of the constitutional right to speedy trial where counsel sought a continuance over defendant's objections), *overruled on other grounds by Heuss v. State*, 687 So. 2d 823 (Fla. 1996); *State v. Taylor*, 298 S.W.3d 482 (Mo. 2009) (counsel obtained continuances over objection of defendant to prepare for trial; lengthy delay; defendant effectively asserted constitutional right to speedy trial; no violation of Sixth Amendment); *see also United States v. Brown*, 498 F.3d 523, 531 (6th Cir. 2007) (delays resulting from defense counsel's need to prepare are attributable to the defendant); *People v. Lomax*, 49 Cal. 4th 530, 556, 234 P.3d 377, 112 Cal. Rptr. 3d 96 (2010) (when defendant refuses to waive time despite attorney's need for time to more prepare, conflict between statutory and constitutional rights to a

speedy trial and Sixth Amendment right to competent, adequately prepared counsel arises; thus, when counsel seeks reasonable time to prepare and delay is for the defendant's benefit, a continuance over the defendant's objection is justified).

Washington courts have reached the same conclusion, albeit with regard to the rule-based speedy trial right. *State v. Campbell*, 103 Wn.2d 1, 15, 691 P.2d 929 (1984) ("[c]ounsel was properly granted the right to waive trial in 60 days, over defendant's objection, to ensure effective representation and a fair trial"); *State v. Lucas*, 167 Wn. App. 100, 112, 271 P.3d 394 (2012); *State v. Williams*, 104 Wn. App. 516, 523, 17 P.3d 648 (2001); *cf. People v. Johnson*, 26 Cal. 3d 557, 567, 162 Cal. Rptr. 431, 606 P.2d 738 (1980) (under California law, defense counsel's request for a continuance over a defendant's objection is treated as a defense time waiver provided defense counsel was "pursuing his client's best interests in a competent manner"); *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004) (request by defendant's attorney for a continuance to prepare for trial waives the defendant's statutory right to a speedy trial despite defendant's objection).

As explained above, this case involved issues of some complexity, and contrary to some of Ollivier's arguments, complexity is not measured by whether the prosecutor believed that the trial itself would be noncomplex or whether matters explored in preparation for trial would actually be part of the trial. Much of the time expended in preparing for this case involved pretrial discovery and suppression issues, and these are the matters that led to most of the delay in this case.

Ollivier's arguments that delay should be attributed to the trial court and the prosecution are unavailing. Ollivier argues that the trial court is responsible in part for delay in obtaining discovery, citing *United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997). But *Graham* involved discovery from the prosecution, a party to the action. Here, discovery was sought from state entities that were not parties in the case, and the trial court simply did not have the same responsibility as it would if a party were dilatory or nonresponsive to discovery requests.

Ollivier also argues that the State had an affirmative duty to assist the defense obtain discovery about the investigation into Detective Saario's misconduct but instead remained passive. Ollivier urges that knowledge of the investigation is imputed to the State and the State should have timely disclosed this knowledge to Ollivier as "*Brady*" evidence material to Saario's credibility,[8] but instead the State continued its passivity. He cites *Kyles v. Whitley*, 514 U.S. 419, 437-38, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995) in support.

Given our analysis below with regard to sufficiency of the affidavit in support of the search warrant and whether it was validly executed, we do not agree that any *Brady* "material evidence" is at issue. "Materiality" means a "'reasonable probability' of a different result," which is "shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *United States v. Bagley*, 473 U.S. 667, 678, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)). The evidence of images constituting child pornography was seized under a valid warrant

---

[8] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

validly executed. The State presented evidence that Ollivier was the individual in possession of the child pornography. Even if we assume the general soundness of Ollivier's rather attenuated argument, the information about the investigation and Saario's resignation—with any impeachment value it had on the issue of Saario's credibility—is not material because even with this information there was no reasonable probability of a different result. *Kyles* does not support Ollivier's claim that the State should be blamed for the delay required to obtain discovery about the investigation into Saario's misconduct.

We also note that despite Ollivier's argument suggesting otherwise, neither the court nor the prosecution had a specific duty to assist Ollivier in obtaining discovery from the Department of Corrections, also a nonparty.

Finally, even if one assumes that any delay was due to institutional dysfunctions attributable to the State, this would weigh against the State but "less heavily than 'deliberate delays or delays related to inexcusable inefficiency.'" *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir. 1980) (quoting *United States v. Companion*, 545 F.2d 308, 312 n.3 (2d Cir. 1976)).

In summary, most of the continuances were sought by defense counsel to provide time for investigation and preparation of the defense. Time requested by the defense to prepare a defense is chargeable to the defendant, and this factor weighs heavily against the defendant.

*Assertion of Rights*

The third *Barker* factor is "the defendant's assertion of or failure to assert his right to a speedy trial." *Barker*, 407 U.S. at 514, 528. The Court added in *Barker* that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id* at 532. Assertion of the speedy trial right is important in the balancing. The Court explained that

> [t]he more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Id.* at 531-32. Thus, assertion of the right is relevant to whether a violation has occurred and also helps to establish or reinforce the conclusion that the defendant has not waived the right.

It may be fairly unusual for a defendant to object to nearly all of a large number of continuances sought by his own attorney. Here, however, Ollivier repeatedly objected to counsel's motions for continuances, and he maintains that therefore his rights to a speedy trial were timely asserted. But under the circumstances, these objections do not weigh in favor of the conclusion that constitutional speedy trial violations occurred.

First, Ollivier's attorney acted as his agent and was responsible for investigating issues and events related to possible defenses. She did this, for example, through discovery requests for records from the King County Sheriff's Office concerning Detective Saario, who prepared the affidavit in support of a search warrant, which

22

counsel sought in order to show that the affidavit contained deliberate falsehoods. Counsel also sought continuances to obtain expert assistance in connection with child pornography on the computer in Ollivier's residence and to obtain information from the Department of Corrections about another possible suspect.

These matters were all relevant avenues of investigation and preparation for Ollivier's defense. In light of the Court's discussion in *Brillon*, we conclude that the delay resulting from such continuances must be attributed to the defense because "delays caused by defense counsel are properly attributable to the defendant." *Brillon*, 129 S. Ct. at 1293.

Second, a contrary conclusion would encourage objections even if defense counsel is pursuing a legitimate defense and the continuances are unquestionably requested for this purpose. Here, as noted, Ollivier has acknowledged that seeking the continuances was reasonable. Appellant's Opening Br. at 20 (Mr. Ollivier "concedes," with regard to his rule-based challenge, "that any of the continuances, standing alone, would not be an abuse of discretion" (emphasis omitted)). His concession establishes that each request for a continuance was a legitimate request for an extension of time to pursue matters in preparation of his defense. But if defense counsel can seek continuances for any purpose and at the same time the defendant can file effective objections—a nearly automatic escape hatch would be created should the trial not proceed as hoped.

Indeed, if continuances over the defendant's objections were to weigh in favor of the defendant's claim of a violation, then counsel might be encouraged

to delay proceedings by seeking unreasonable continuances, hoping thereby to obtain a dismissal of the indictment on speedy-trial grounds. Trial courts might well respond by viewing continuance requests . . . with skepticism, concerned that even an apparently genuine need for more time is in reality a delay tactic.

*Brillon*, 129 S. Ct. at 1292.[9]

Third, this brings to the fore the important fact that Ollivier's right to counsel was furthered by counsel's requests. If because of the objections the trial court had denied counsel's requests for continuances that were needed to prepare for trial, then Ollivier might have had a strong claim that the right to effective assistance of counsel had been denied.

The third factor, whether the defendant has asserted his speedy trial rights, does not weigh in Ollivier's favor, given that his objections cannot be given effect when his own counsel sought the continuances to prepare for trial. But this factor does not weigh in favor of the State, either.

"Whether and how a defendant asserts his right is closely related to the other factors . . . . The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences." *Barker*, 407 U.S. at 531. This brings us to this last of the four factors.

---

[9] The Court was specifically referring to appointed counsel's requests if appointed counsel was considered to be acting as the State for speedy trial purposes. The same reasoning applies here, however.

24

*Prejudice*

Under the fourth factor, prejudice to the defendant as a result of delay may consist of (1) "'oppressive pretrial incarceration,'" (2) "'anxiety and concern of the accused,'" and (3) "'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (alteration in original) (quoting *Barker*, 407 U.S. at 532). These particularized showings of prejudice are not just theoretical underpinnings to presumed prejudice, they are specific types of prejudice that a defendant *can* offer in any case but, as in the present case, a defendant *must* offer these or other particularized showings of prejudice when the delay is not due to bad faith on the government's part and the delay is not sufficiently long for a presumption of prejudice to arise. *Id.* at 656-68.[10]

Contrary to Mr. Ollivier's contention, prejudice is not always presumed. To the extent that our decision in *Iniguez* may have been less than clear on this point, we clarify it now. A defendant ordinarily must establish actual prejudice before a violation of the constitutional right to a speedy trial will be recognized.

As one court has accurately summarized the analysis:

> The presumption of prejudice discussed in *Doggett*, however, is not automatically applicable whenever a defendant's trial is delayed. "Pretrial delay is often both inevitable and wholly justifiable." *Id.* at 656, 112 S. Ct. 2686. When the government prosecutes a case with reasonable diligence, a defendant who cannot demonstrate how his defense was prejudiced with specificity will not make out a speedy trial claim no matter how great the ensuing delay. *See id.*

---

[10] The presumption of prejudice referred to in connection with the fourth *Barker* factor is prejudice that does not require that the defendant show actual prejudice to his defense. It is to be distinguished from the threshold presumption of prejudice that triggers the *Barker* analysis.

Where there is evidence of negligence on the government's part, but no bad faith, the Supreme Court has declared that a presumption of prejudice may arise, *depending upon the length of the delay. See id.* at 657, 112 S. Ct. 2686. "[T]o warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." *Id.* In *Doggett*, the Supreme Court noted an "extraordinary 8 1/2 year lag between Doggett's indictment and arrest," *id.* at 652, 112 S. Ct. 2686, and concluded that this delay was sufficient to create a presumption of prejudice to the defendant.

*United States v. Howard,* 218 F.3d 556, 564-65 (6th Cir. 2000) (emphasis added).[11]

---

[11] *Doggett*'s explanation is more lengthy, but in relevant part is as follows:

Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down. . . . [I]f the Government had pursued Doggett with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail. Indeed, that conclusion would generally follow as a matter of course *however great the delay, so long as Doggett could not show specific prejudice to his defense.*

. . . [O]n the other hand, . . . Doggett would prevail if he could show that the Government had intentionally held back in its prosecution of him to gain some impermissible advantage at trial. . . . *Barker* stressed that official bad faith in causing delay will be weighed heavily against the government . . . and *a bad-faith delay the length of this negligent one would present an overwhelming case for dismissal.*

Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him. . . .

*Barker* made it clear that "different weights [are to be] assigned to different reasons" for delay. Although *negligence is obviously to be weighed more lightly than a deliberate intent to harm* the accused's defense, *it still falls on the wrong side* of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that *the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows.* . . . Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. . . .

To be sure, *to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence*

This analysis requires a showing of particularized prejudice when shorter delays and no government bad faith are involved. Presumed prejudice is recognized only in the case of extraordinary delay, except when the government's conduct is more egregious than mere negligence. WAYNE R. LAFAVE, JEROLD H. ISRAEL, NANCY J. KING & ORIN S. KERR, CRIMINAL PROCEDURE § 18.2(e) (3d ed. 2007). This treatise explains that in applying the analysis from *Doggett* courts "'generally have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years except where the government was responsible for the delay by virtue of something beyond simple negligence.'" *Id.* (quoting *United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003)). In *Serna-Villarreal*, 352 F.3d at 232, the court summarized:

> [T]his Court and others generally have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years. *See, e.g., Doggett*, 505 U.S. at 658, 112 S. Ct. 2686 (finding presumed prejudice after a government-caused delay of six years); [*United States v.*] *Bergfeld*, 280 F.3d [486,] 488 [(5th Cir.2002)] (finding presumed prejudice after a delay of five years and three months but noting that, "[h]ad the delay been considerably shorter, [the defendant] might well have been properly required to demonstrate prejudice"); *United States v. Cardona*, 302 F.3d 494, 499 (5th Cir.2002) (finding presumed prejudice after a delay of five and one-half years); *United States v. Brown*, 169 F.3d 344, 350 (6th

---

*demonstrably causing such prejudice.* But even so, the Government's egregious persistence in failing to prosecute Doggett is clearly sufficient. The lag between Doggett's indictment and arrest was 8 1/2 years, and he would have faced trial 6 years earlier than he did but for the Government's inexcusable oversights. The portion of the delay attributable to the Government's negligence far exceeds the threshold needed to state a speedy trial claim; indeed, we have called shorter delays "extraordinary." . . . When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, . . . and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, . . . nor persuasively rebutted, . . . the defendant is entitled to relief.

*Doggett*, 505 U.S. at 656-58 (emphasis added).

Cir.1999) (finding presumed prejudice after a five and one-half year delay); *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir.1992) (finding presumed prejudice after a six-year delay). In the instant case, the delay between indictment and trial was, at most, only three years and nine months, considerably less than the delay in the cases cited above. And, if this Court considers only the period between the time of the indictment and the time that the government began diligently to pursue the charge, the delay shortens to three years and six months. Accordingly, the length of delay factor of the *Barker* balancing test does not weigh heavily in [the defendant's] favor.

Numerous cases exemplify this part of the *Barker* analysis as more fully explained in *Doggett*. *E.g., United States v. Molina-Solorio*, 577 F.3d 300, 307 (5th Cir. 2009); *Howard*, 218 F.3d at 564-65; *Hills*, 618 F.3d at 632; *United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir. 2009) ("[i]n *Doggett v. United States*, the Supreme Court held that if there is extreme delay, the defendant need not present specific evidence of prejudice and instead may rely on the presumption of prejudice created by the extreme delay").

The delay in Ollivier's case is not lengthy enough to constitute extreme delay warranting the presumption of prejudice. *See, e.g., Toombs*, 574 F.3d 1275 (22-month delay does not constitute extreme delay); *Serna-Villarreal*, 352 F.3d at 232 (three years and nine months insufficient for presumed prejudice); *United States v. Williams*, 557 F.3d 943, 950 (8th Cir. 2009) (400-day "delay was not of such length to eliminate the need to show particularized prejudice and because there is no evidence that the delay impeded [the defendant's] defense or threatened to deprive him of a fair trial, . . . there was no Sixth Amendment violation").

The next issue, therefore, is whether Mr. Ollivier has established particularized prejudice that would weigh heavily against the State. As mentioned, the three types of

prejudice identified in *Barker* and *Doggett* are oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the defendant's defense will be impaired by dimming memories and loss of exculpatory evidence.

Oppressive Pretrial Incarceration

While Ollivier spent almost two years in jail awaiting his trial this is not, on its face, oppressive. Periods of incarceration as long or longer have been found not oppressive. *E.g.*, *Hartridge v. United States*, 896 A.2d 198 (D.C. 2006) (27 months); *United States v. Leeper*, No. 08-CR-69S-5,12, 2009 WL 5171831, at *6 (W.D.N.Y. Dec. 23, 2009) (unpublished) (22 months; this amount of time, without more, cannot show undue oppression); *United States v Herman*, 576 F.2d 1139, 1147 (1978) (22 months); *State v. Couture*, 2010 MT 201, 357 Mont. 398, 418-19, 240 P.3d 987 (924 days); *see also Smith v. State*, 275 Ga. 261, 263, 564 S.E.2d 441 (2002) (19-month incarceration; no evidence this "was oppressive to a degree beyond that which necessarily attends imprisonment"). Moreover, his complaints about jail conditions do not suggest that conditions were oppressive; rather, the conditions are common to incarceration.[12]

Undue Anxiety and Concern

Anxiety and concern are often experienced by defendants awaiting trial. "[T]he second type of prejudice . . . is always present to some extent, and thus absent some unusual showing is not likely to be determinative in defendant's favor." LAFAVE et al., *supra*, § 18.2(e) (footnote omitted); *United States v. Henson*, 945 F.2d 430, 438 (1st Cir.

---

[12] Ollivier complains that he was prejudiced because of the effect of the continuances on his potential for release on bond. However, he has failed to comprehensibly explain a connection between the delay and the prejudice that he claims was the result.

1991) ("considerable anxiety normally attends the initiation and pendency of criminal charges; hence only 'undue pressures' are considered"); *United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994) (the focus is whether there is some "special harm suffered which distinguishes [the defendant's] case"). Mr. Ollivier has not established this type of unusual anxiety and concern.

Impairment of Defense

The most important of the three interests is protection against impairment of the defense because if the defendant cannot adequately prepare his case, "the fairness of the entire system is skewed." *Barker*, 407 U.S. at 532. In Ollivier's case, however, most of the continuances that resulted in the delay of which he complains were requested by defense counsel *in order to prepare an adequate defense*. Thus, any impairment of this interest must be weighed against the benefits obtained via the continuances, such as the records pertaining to the honesty or dishonesty of the detective who sought the search warrant.

Further, although he expresses concern about one of his witnesses' ability to recall and testify about matters, the witness did testify and consistently with Ollivier's account of events, i.e., that Ollivier never showed him child pornography. Ollivier's ability to call another witness was not impaired as claimed because he could have been called. The only claimed impairment of his defense that might be implicated concerns whether witnesses could recall the facts pertaining to his claim that officers failed to give him a

copy of the search warrant. But as we explain below, a copy of the search warrant was posted at the apartment and no violation of CrR 2.3(d) occurred.

*Balancing the Factors*

Balancing the *Barker* factors clearly weighs against the defendant. The delay was not unduly long; the reasons for the delay are primarily attributable to the defense because defense counsel sought numerous continuances to facilitate investigation and preparation of the defense; although Ollivier objected to most of the continuances and asserted his speedy trial rights, this factor does not strongly weigh in his favor in light of the reasons for the continuances and the absence of actual prejudice; and because the delay was not sufficiently extraordinary to be presumed prejudicial, Ollivier was required to show particularized prejudice and he has made an insufficient showing to tip the scales in his favor.

We conclude that there was no violation of Ollivier's constitutional right to a speedy trial under the Sixth Amendment and article I, section 22.

*Sufficiency of the Affidavit in Support of the Search Warrant*

Ollivier challenges the seizure of the computers and other property on the grounds of an invalid search warrant. He first maintains that there was an insufficient showing of probable cause once material misrepresentations made by Detective Saario were redacted from the affidavit in support of the warrant.

Article I, section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." A search warrant may be issued

only on a determination of probable cause. *State v. Jackson*, 150 Wn.2d 251, 264, 76 P.3d 217 (2003). Probable cause exists when the affidavit in support of the search warrant "sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime may be found at a certain location." *Id.* Affidavits in support of a search warrant are examined in a commonsense, not a hypertechnical manner, and doubts are to be resolved in favor of the warrant. *State v. Chamberlain*, 161 Wn.2d 30, 41, 162 P.3d 389 (2007); *Jackson*, 150 Wn.2d at 265.

*Preliminary Showing of Material Misrepresentation or Omission*

A search warrant may be invalidated if material falsehoods were included in the affidavit intentionally (deliberately) or with reckless disregard for the truth, or if there were deliberate or reckless omissions of material information from the warrant. *State v. Chenoweth*, 160 Wn.2d 454, 478-79, 158 P.3d 595 (2007); *State v. Garrison*, 118 Wn.2d 870, 872-73, 827 P.2d 1388 (1992). If the defendant makes a substantial preliminary showing of such a material misrepresentation or omission, the defendant is entitled to a *Franks*[13] evidentiary hearing. *Garrison*, 118 Wn.2d at 872. If at the hearing the defendant establishes the allegations, then the material misrepresentation must be stricken or the omitted material must be included and the sufficiency of the affidavit then assessed as so modified. *State v. Cord*, 103 Wn.2d 361, 367, 693 P.2d 81 (1985). If at that point

---

[13] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

the affidavit fails to support a finding of probable cause, the warrant will be held void and evidence obtained when the warrant was executed must be suppressed. *Id.*[14]

Here, Ollivier made a preliminary showing that triggered an evidentiary hearing. The trial court found that Detective Saario deliberately misrepresented that Ollivier's roommate had told her that Ollivier kept a red, locked box containing pornographic magazines with photographs of unclothed children under 16 years of age in sexually explicit poses for sexual gratification. The roommate had actually told her that Ollivier kept a red box with pornography, including "*Playboy*" magazines and "*Barely Legal*" magazines. Clerk's Papers at 233 (Finding of Fact 1.f). The difference is significant in that child pornography is illegal to possess. During argument to the trial court, Ollivier claimed that another misrepresentation was made, i.e., that the roommate saw Ollivier looking at both computer and print images of children under 10, when the roommate actually said only that he saw Ollivier viewing computer images.

*Qualifying Information Sufficient To Establish Probable Cause*

The trial court determined that when the false information was omitted, there was sufficient qualifying information in the affidavit to establish probable cause to support issuance of the search warrant.

---

[14] A similar analysis applies when information obtained by an unconstitutional search is included in an affidavit of probable cause. The illegally obtained information may not be used to support the warrant and the court must view the warrant without the illegally obtained information and determine whether the remaining facts in the affidavit are sufficient to establish probable cause to support the search warrant. Then, if the probable cause is lacking, the warrant is invalidated and evidence seized pursuant to the warrant must be excluded. *State v. Eisfeldt*, 163 Wn.2d 628, 640, 185 P.3d 580 (2008); *State v. Ross*, 141 Wn.2d 304, 311-15, 4 P.3d 130 (2000).

The determination whether the qualifying information amounts to probable cause is a legal question that is reviewed de novo. *State v. Garcia-Salgado*, 170 Wn.2d 176, 240 P.3d 153 (2010). We agree with the trial court that the affidavit, after the misrepresentations are deleted, establishes probable cause. It states that the affiant received a telephone call from a CCO with whom she had worked for the past four years on criminal investigations, including investigations involving sex related crimes. It states the CCO advised the affiant that one of the CCO's clients, Eugene Anderson, who was a registered sex offender, had told the CCO that he had seen his roommate Ollivier, also a registered sex offender, during a recent, specified 10-day period looked at many photographs on his personal home computer at a specified address and these photographs were of children under 10 years of age who were posed, deliberately exposing their genitals. Anderson also told the CCO that he saw Ollivier view depictions of minors under age 16 engaging in sexual intercourse. The affidavit then relates that the affiant took Anderson's taped statement in which he said he knew the individuals in the photos were prepubescent because of their physical characteristics (which were described) and also said that while he lived with Ollivier, Ollivier viewed child pornography everyday.

*Informant's Credibility*

Mr. Ollivier also contends, however, that the affidavit is insufficient because it does not establish Anderson's credibility as an informant. We continue to follow the *Aguilar-Spinelli* standard under article I, section 7.[15] *See State v. Lyons*, 174 Wn.2d 354,

---

[15] *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969) were overruled by *Illinois v. Gates*,

359 n.1, 275 P.3d 314 (2012). This standard has two prongs. The basis of knowledge prong requires that the affidavit contain "sufficient facts to convince a reasonable person of the probability the defendant is engaged in criminal activity and that evidence of criminal activity can be found at the place searched." *Id.* at 359 & 359 n.2. The veracity prong requires that the affidavit contain information from which a determination can be made that the informant is credible or the information reliable. *State v. Jackson*, 102 Wn.2d 432, 435, 688 P.2d 136 (1984). When a citizen informant provides information, a relaxed showing of reliability suffices "because there is less risk of the information being a rumor or irresponsible conjecture which may accompany anonymous informants" and an identified informant's report is less likely to be marred by self-interest." *State v. Gaddy*, 152 Wn.2d 64, 72-73, 93 P.3d 872 (2004); *see Chamberlin*, 161 Wn.2d at 42; *State v. Huft*, 106 Wn.2d 206, 211, 720 P.2d 838 (1986) (citing *State v. Northness*, 20 Wn. App. 551, 557, 582 P.2d 546 (1978)).

Accordingly, "[c]itizen informants are deemed presumptively reliable." *Gaddy*, 152 Wn.2d at 73; *see State v. Chenoweth*, 160 Wn.2d 454, 483, 158 P.3d 595 (2007) (reference to the "presumed inherent reliability of a citizen informant"); Charles W. Johnson, *Survey of Washington Search and Seizure Law: 2005 Update*, 28 SEATTLE U.

---

462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), in which a totality of the circumstances analysis was adopted for purposes of the Fourth Amendment.

Both *Aguilar* and *Spinelli* involved tips from confidential informants and we recently acknowledged that the *Aguilar-Spinelli* standard applies to confidential informants. *Lyons*, 174 Wn.2d at 359 & 359 n.1 ("we still adhere to the *Aguilar[-]Spinelli* standard for establishing probable cause via a confidential informant"). We also employ the *Aguilar-Spinelli* standard when a named citizen informant provided the information used to establish probable cause. *State v. Chamberlin*, 161 Wn.2d 30, 41-42, 162 P.3d 389 (2007).

L. Rev. 467, 534-35 (2005) (and cases cited therein) (when a named informant provides information in the form of facts and circumstances sufficiently detailed to establish personal knowledge, the informant may be presumed to be reliable when his or her identity is disclosed to the issuing judge). The defendant must rebut the presumption of reliability to overcome it. *See Gaddy* 152 Wn.2d at 73-74.

The second prong, basis of knowledge, may be satisfied by a showing that the informant had personal knowledge of the facts provided to the affiant. *State v. Vickers*, 148 Wn.2d 91, 112, 59 P.3d 58 (2002).

Here, Mr. Ollivier concedes that Anderson had a basis of knowledge as to whether there was pornography in the apartment. The concession is appropriate because Anderson lived in the apartment for a brief period and provided information about personal observations of child pornography on Ollivier's computer.

Ollivier contends, however, that no presumption of credibility should attach because Anderson was under psychiatric care, jailed due to community custody violations at the time he provided the information, and if he was found in possession of child pornography, he could have been punished, but none of this information was in the affidavit. These are appropriate facts to present in an effort to rebut the presumption of credibility attaching to a citizen informant, but we do not agree these facts mean the presumption does not arise. Nor do they rebut the presumption here.

As the State demonstrates, the affidavit identified Anderson as a prior sex offender under the supervision of a CCO, and the fact he told the CCO about child pornography in

the same residence where he had resided, which was revealed in the affidavit, had the

potential to expose him to additional sanctions. Thus, rather than bringing his credibility

into question, this information showed that he would be motivated to tell the truth

because he was a supervised registered sex offender and that his information was reliable.

Ollivier does not explain why the fact that Anderson was under psychiatric care

shows that he was not credible or his information was unreliable in the circumstances.

In sum, we find that the affidavit sufficiently disclosed facts from which the judge

could assess the reliability of Anderson's information and the basis of his knowledge.

*CrR 2.3(d)*

Mr. Ollivier contends that the evidence found on his computer must be suppressed

because officers failed to present him with a copy of the search warrant before it was

executed, as he says is required by CrR 2.3(d). The State maintains that there is no such

requirement under the rule.

CrR 2.3(d) provides in part:

> **Execution and Return With Inventory**. The peace officer taking
> property under the warrant shall give to the person from whom or from
> whose premises the property is taken a copy of the warrant and a receipt for
> the property taken. If no such person is present, the officer may post a copy
> of the search warrant and receipt.

We construe court rules using the same rules that we apply when construing

statutes. *State v. McEnroe*, 174 Wn.2d 795, 800, 279 P.3d 861 (2012). The plain

language at issue provides that if an officer takes property pursuant to the warrant, then

the officer "shall give" a copy of the warrant to the person from whose premises the

property is taken or post a copy of the warrant.[16] Nothing in the language of the rule says that a copy of the warrant must be provided before the search is begun.

Here, property was taken and Detective Saario posted a copy of the warrant before leaving. We do not agree that there was a violation of the rule.

### CONCLUSION

We hold that the delay in bringing defendant Brandon Ollivier to trial, which resulted because of numerous continuances sought by his own counsel, did not violate his rights to a speedy trial under CrR 3.3, article I, section 22, or the Sixth Amendment. The delay is attributable to Ollivier because his counsel acts as his agent when seeking continuances to further the defense, and his objections to these acts do not weigh in favor of finding a violation of constitutional speedy trial rights. If they did, counsel's ability to provide effective assistance of counsel and the attorney-client relationship would be seriously undermined.

We also hold that when misrepresentations are redacted from the affidavit in support of the search warrant authorizing the search of Ollivier's apartment, the affidavit contains sufficient information to establish probable cause to search. Finally, there is no requirement under CrR 2.3(d) that a copy of the search warrant be presented prior to commencement of the search, and a copy of the warrant was posted, satisfying the requirement that a copy be provided when property is seized under the warrant.

---

[16] The rule is consistent with "[t]he prevailing view in state and federal cases" that exhibiting or delivering a copy of the warrant "need only be done prior to post-search departure by the police." 2 WAYNE R. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 4.12(a) (5th ed. 2012).

We affirm the Court of Appeals and affirm Ollivier's conviction.

Madsen, C.J.

WE CONCUR:

Wiggins, J.

No. 86633-3

CHAMBERS, J.* (dissenting)—Brandon Ollivier was arrested in April 2007. His trial took place nearly two years later, in March 2009, after 22 continuances, during which time he remained incarcerated. The Washington and United States constitutions both guarantee criminal defendants the right to a speedy trial. CONST. art. I, § 22; U.S. CONST. amend. VI. The Sixth Amendment and article I, section 22 of the Washington Constitution also protect Ollivier's right to effective assistance of counsel. *State v. Thomas*, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). The majority, in my view, forces a defendant to give up one of these two important fundamental rights in order to maintain the other. The court has decided that in order to assure a defendant receives effective assistance of counsel, the defendant must waive his right to a speedy trail, and if he does not, the court will do it for him. I do not read these two fundamental rights in the alternative. Ollivier was entitled to both effective assistance of counsel and a speedy trial.

*Justice Tom Chambers is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

The majority would, on an agency theory, deprive Ollivier of his speedy trial right by permitting his appointed counsel to waive his right to a speedy trial little by little, time and time again, over Ollivier's strenuous objections. The court must be vigilant of collusion between counsel and defendant. But because there are circumstances where appointed counsel may have unduly burdensome case loads, applying principles of agency effectively strips the accused of the right of a speedy trial, sacrificing it to the overworked lawyer to lessen the lawyer's case load.[1] To such a profound misreading of our constitutions, I cannot agree. I dissent.

## FACTS

In 2007, Ollivier, a convicted sex offender, was living with another convicted sex offender, Eugene Anderson. Anderson was arrested in March 2007 for failure to register as a sex offender. While in custody, Anderson told his community custody officer that he had seen Ollivier looking at child pornography on the computer in the apartment he shared with Ollivier. The exact date of Ollivier's arrest is not clear from the record before us, but it appears to be on or about April 18, 2007. Trial did not begin until March 9, 2009. Ollivier was found guilty by a jury of one count of possessing depictions of minors engaged in

---

[1] I use the example of the overworked defender to emphasize a flaw in the majority's analysis. The record does not address whether the attorney in this particular case was overburdened.

2

sexually explicit conduct on April 14, 2009. Ollivier remained in custody from the time of his arrest until his trial, and his judgment and sentence reflects a total credit of 768 days in the King County jail.

Before Ollivier's trial, the trial court granted 22 motions for continuance. Ollivier objected, often strenuously, to every continuance but the first two.[2] Although nearly all the continuances were requested by Ollivier's attorney, the reasons for the continuances were numerous and varied and included, for example, ongoing investigation, incomplete preparation by a defense expert, vacationing defense attorney, vacationing detective, new investigator on the case, and delays in obtaining discovery material from the Department of Corrections and the King County Sheriff's Office. As to the last example, Ollivier's attorney apparently had quite a lot of trouble obtaining discovery from government agencies, and that accounted for a significant portion of the delay. Out of 22 continuances only two were requested by the prosecution. However, some continuances requested by the defense contain explanations that also implicate the State. *E.g.,* Clerk's Papers (CP) at 267 (prosecutor jury duty); CP at 277 (prosecutor absent); CP at 290 (prosecutor on vacation). But it is evident that most of the continuances were requested by and granted to the defense, not the State.

---

[2] Ollivier may not have objected to one other continuance on February 15, 2008. *See* Report of Proceedings of Continuance Hearings (RP) (Feb. 15, 2008) at 39.

It appears that at least three bond hearings occurred. Record of Proceedings of Continuance Hearings (RP) (Nov. 30, 2007) at 27 (indicating a bond hearing on Nov. 19, 2007); Verbatim Report of Proceedings (VRP) (Dec. 10, 2007) at 2 (indicating a bond hearing sometime after Dec. 10, 2007); RP (Dec. 28, 2007) at 35 (indicating a bond hearing sometime in Jan. 2008). The record does not reveal why Ollivier was never released on bond, but Ollivier's attorney admitted the judge had ruled unfavorably for Ollivier in one hearing in part "based on [the attorney's] assertion that the case would not be continued because at that time [she] did not think that [she] would be asking for a continuance." RP (Nov. 30, 2007) at 27.

At one point Ollivier attempted to fire his attorney, but withdrew the motion because he believed "she has her priorities in order, and everything straightened out." VRP (Dec. 10, 2007) at 4. Fifteen more months passed before Ollivier went to trial.

## ANALYSIS

The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. The Washington Constitution article I, section 22 states: "In criminal prosecutions the accused shall have the right . . . to have a speedy public trial." We review a claim

4

of denial of constitutional rights de novo. *State v. Iniguez*, 167 Wn.2d 273, 280, 217 P.3d 768 (2009) (citing *Brown v. State*, 155 Wn.2d 254, 261, 119 P.3d 341 (2005)).

In addition to the speedy trial right, an accused has another important constitutional right at stake, the right to effective assistance of counsel. CONST. art. I, § 22; U.S. CONST. amend. VI; *Thomas*, 109 Wn.2d at 229. Both protections are part of the bedrock foundation upon which our justice system rests. A person cannot be forced to waive his or her right to a speedy trial in order to maintain the right to effective assistance of counsel. *See State v. Michielli*, 132 Wn.2d 229, 244-46, 937 P.2d 587 (1997) (citing *State v. Cannon*, 130 Wn.2d 313, 328-29, 922 P.2d 1293 (1996)). Nor is a defendant obliged to choose between a speedy trial and effective assistance. *See State v. Price*, 94 Wn.2d 810, 814, 620 P.2d 994 (1980). While these two fundamental rights may seem in tension in a case like this, an accused is entitled to have both constitutional rights enforced. Both the trial judge hearing motions for continuances and the prosecutor have a role in assuring both of these important constitutional rights are upheld.

Our speedy trial analysis is "substantially the same" as the federal analysis. *Iniguez*, 167 Wn.2d at 290. We analyze the four factors from the United States Supreme Court case *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d

101 (1972). "As a threshold to the *Barker* inquiry, a defendant must show that the length of the delay crossed a line from ordinary to presumptively prejudicial." *Iniguez*, 167 Wn.2d at 283 (citing *Doggett v. United States*, 505 U.S. 647, 651-52, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992); *Barker*, 407 U.S. at 530). If the delay is presumptively prejudicial, then we turn to the four *Barker* factors.

First, we examine the length of the delay, "focus[ing] on the extent to which the delay stretches past the bare minimum needed to trigger the *Barker* analysis." *Id.* at 283-84 (citing *Doggett*, 505 U.S. at 652). Second, we examine the reason for the delay. *Id.* at 284 (citing *Barker*, 407 U.S. at 531). Third, we consider the extent to which a defendant asserted his speedy trial rights. *Id.* (citing *Barker*, 407 U.S. at 531). Fourth, we consider the prejudice to the defendant as a result of the delay. *Id.* (citing *Barker*, 407 U.S. at 532).

The majority's analysis of three of the four *Barker* factors relies heavily on the tension between the defendant's right to a speedy trial and right to competent representation. Regarding the first factor—the length of the delay—the majority states that "the length of the delay was reasonably necessary for defense preparation and weighs against the defendant." Majority at 14. Regarding the second factor—the reason for the delay—the majority states that "[t]ime requested by the defense to prepare a defense is chargeable to the defendant, and this factor

6

weighs heavily against the defendant." Majority at 21. And finally, regarding the third factor—whether the defendant asserted his speedy trial right—the majority states that "[t]he third factor . . . does not weigh in Ollivier's favor, given that his objection cannot be given effect when his own counsel sought the continuances to prepare for trial." *Id.* at 24. In essence, the majority finds that none of the first three factors weigh in Ollivier's favor because "[i]f . . . the trial court had denied counsel's requests for continuances that were needed to prepare for trial, then Ollivier might have a strong claim that the right to effective assistance of counsel had been denied." *Id.* In other words, under the majority's analysis, Ollivier could have either effective assistance of counsel or a speedy trial, but not both. I believe that result is unacceptable. My analysis of the first three factors consequently differs from the majority's analysis. I also disagree with the majority's discussion of the fourth factor, as discussed below.

THE FOUR SPEEDY TRIAL FACTORS

    i.   First Factor: Length of Delay

The parties in this case agree that the delay of 23 months is presumptively prejudicial and triggers the *Barker* analysis. However, the first factor focuses on how much longer the delay was than the minimum needed to trigger the analysis. *See Iniguez,* 167 Wn.2d at 292. *Iniguez* rejected a bright line period of delay that

7

triggers a presumption of prejudice and emphasized that each case must be evaluated upon its own merits. *Id.* at 291-92 (citing *State v. Corrado*, 94 Wn. App. 228, 231, 972 P.2d 515 (1999)). For guidance, we examined precedent with similar facts. Courts in general have often found presumptive prejudice at a delay of about eight months to one year. *Id.* In *Iniguez*, we found an eight month delay was presumptively prejudicial under the facts of the case. *Id.* Under the relatively straightforward facts and issues in this case, eight months was sufficient to cross the line to presumptive prejudice.

Ollivier's trial was delayed more than a full year beyond any reasonable presumptively prejudicial time for a delay of his trial. It is not clear why the majority finds the reason for the delay—the second factor—significant in its analysis of the first factor. In fact, the majority's analysis generally conflates and then elides all the first three factors into the "reason for the delay" factor. Regardless, more than one year in jail is an exceptionally long time for a noncomplex case such as this one[3] and cannot be said to be in compliance with a

_____

[3] I will concede that at the outset, this case appeared to have some complexity as the defense's case rested in part upon expert testimony relating to an analysis of the computer in the apartment available to more than one registered sex offender. However, the defense had concluded by November 30, 2007, that its expert's "services will not be required . . . for the case." RP (Nov. 30, 2007) at 26-27. From the defense's point of view it appears there were only two issues for trial: whether the images on the computer were Ollivier's or his roommate's and whether the seizure of the computer was lawful. It

constitutional mandate for a speedy trial. Overall this factor weighs heavily in favor of the defendant.

### ii. Second Factor: Reason for Delay

In general, this factor looks at fault—who is to blame for the delay—by asking "whether the government or the criminal defendant is more to blame for th[e] delay." *Doggett*, 505 U.S. at 651 (citing *Barker*, 407 U.S. at 530). The majority, by contrast, focuses on whether "the delay is due to trial preparation." Majority at 14. But who is to blame for the delay is not necessarily the same question as whether the delay is due to the defense counsel's trial preparation. For example, in this case, a large number of continuances resulted from the failure of state agencies to timely respond to discovery requests. *E.g.*, RP (Mar. 7, 2008) at 41; RP (June 4, 2008) at 46. Defense counsel was also very busy with other cases. At one point, the defendant's attorney admitted that she was simply "not prepared." RP (Sept. 5, 2008) at 51. Other examples of the reasons for delay are numerous and many have been delineated above. The defendant himself was never

---

appears also that the bulk of the delay occurred while defense counsel obtained two records: records from the Department of Corrections about the computer skills of Ollivier's roommate, Anderson, to impeach his claim he was computer illiterate and records from the King County Sheriff's Office concerning the detective responsible for the search warrant affidavit who was accused of dishonesty. From the prosecution's perspective, the case was not particularly complex either. The charges were straightforward; the crime did not involve multiple parties, involved one eyewitness, and did not have a specific victim.

personally responsible for delay, and he objected in almost every instance to continuance. Certainly, a person should not rot in jail because an appointed defender is too overworked to prepare his or her case for trial.

I do not fault the trial judge in this case. Once the case was assigned to the trial judge only one continuance was permitted. Unfortunately, various presiding department judges granted most of the continuances without taking any steps to ensure the trial would occur in a timely fashion. Some of the delay was caused by government agencies apparently not responding to discovery requests and these agencies were not parties before the court. The judge does not have a specific duty under the *Barker* analysis, but I would stress that judges are more than potted plants in the corner of the courtroom. And judges are more than umpires calling strikes and balls (although even umpires move the game along and do not permit undue delays). I understand this is not always an easy task for a judge; judges should not force cases to trial when counsel is unprepared. Nor should judges interfere with attorney-client relationships. But neither can the judge permit the defendant to languish in jail for an unreasonable length of time merely because appointed counsel has too heavy a case load. When practical and appropriate, judges should exercise the court's authority to control the calendar and move a case forward in a timely fashion. That was not done in this case.

Nor do I find a specific fault with the prosecutor in this case—but neither am I willing to hear the prosecutor complain. The prosecutor has no specific duty to assist the defense in obtaining discovery from third parties. But, as we have said before, the prosecutor does owe a duty to defendants to ensure their constitutional rights are not violated. *State v. Monday,* 171 Wn.2d 667, 676, 257 P.3d 551 (2011) (citing *State v. Case,* 49 Wn.2d 66, 70-71, 298 P.2d 500 (1956)). Such officials, with the power of the state at their disposal, must constantly bear in mind ""*"that a fearless, impartial discharge of public duty, accompanied by a spirit of fairness toward the accused, is the highest commendation they can hope for.""*" *State v. Warren,* 165 Wn.2d 17, 27-28, 195 P.3d 940 (2008) (quoting *State v. Charlton,* 90 Wn.2d 657, 665, 585 P.2d 142 (1978) (quoting *State v. Montgomery,* 56 Wash. 443, 447-48, 105 P. 1035 (1909))). When trial is delayed as long as this one primarily because the defense claims to be having difficulty obtaining records from the King County Sheriff's Office and Department of Corrections without the State making efforts or suggestions to expedite the process, the State is not in a position, in my view, to protest too loudly. This factor does not weigh heavily in favor of either party in this case.

    iii.   Third Factor: Defendant's Objections

The third factor examines "whether and to what extent a defendant demands a speedy trial." *Iniguez*, 167 Wn.2d at 294 (citing *Barker*, 407 U.S. at 528-29). We look at the frequency and force of the defendant's objections, and we give strong evidentiary weight to a defendant's assertion of his rights. *Id.* at 295 (citing *Barker*, 407 U.S. at 529).

The decision that the majority would thrust upon criminal defendants to give up one of two fundamental rights is most apparent in its analysis of the third factor. The majority makes an agency argument that no matter how often or strenuously a defendant objects to continuing his trial, if the request for a continuance is made by the defendant's lawyer for the purposes of preparing for trial, that request is attributable to the defendant. I disagree.

The majority relies upon *Vermont v. Brillon*, 556 U.S. 81, 129 S. Ct. 1283, 173 L. Ed. 2d 231 (2009). But that case is entirely distinguishable. In fact, the *Brillon* Court itself emphasized the extremely narrow nature of its holding:

> *Barker*'s formulation "necessarily compels courts to approach speedy trial cases on an *ad hoc* basis," and the balance arrived at in close cases ordinarily would not prompt this Court's review. But the Vermont Supreme Court made a fundamental error in its application of *Barker* that calls for this Court's correction. The Vermont Supreme Court erred in attributing to the State delays caused by "the failure of several assigned counsel . . . to move his case forward," and in failing adequately to take into account the role of Brillon's disruptive behavior in the overall balance.

12

*Brillon*, 556 U.S. at 91-92 (citations omitted). As the above passage illustrates, the question in *Brillon* was plainly *not* whether defense counsel may indefinitely obtain continuances over the specific objection of the defendant. Instead, the question in *Brillon* was twofold.

The first question was whether the Vermont Supreme Court erred by holding that a public defender's request for continuances may be attributed to the State because the defender is assigned and paid for by the State rather than privately retained. The Court answered yes. *Id.* at 85 ("We hold that the Vermont Supreme Court erred in ranking assigned counsel essentially as state actors in the criminal justice system. Assigned counsel, just as retained counsel, act on behalf of their clients . . . .").

The second question was whether the Vermont Supreme Court failed to consider the fact that the defendant himself was plainly a bad actor in causing the delay in his own case. That fact weighed heavily against him in the Court's decision, as is evident in the above passage. The Court noted that Brillon fired three of his attorneys and was assigned new counsel six times. *Id.* at 86-88. Each time Brillon fired a lawyer, the judge warned him the motion to dismiss counsel would result in him spending more time in jail. *Id.* at 87. The Court also made a point of repeating the concern voiced by the dissent in the Vermont State Supreme

13

Court's decision below: "But for Brillon's 'repeated maneuvers to dismiss his lawyers and avoid trial through the first eleven months following arraignment,' the dissent explained, 'the difficulty in finding additional counsel would not have arisen.'" *Id.* at 89 (quoting *State v. Brillon,* 183 Vt. 475, 504, 955 A.2d 1108 (2008)).

While it is true that the *Brillon* Court stated, based upon agency principles, that in a Sixth Amendment speedy trial context, delay caused by counsel is "ordinarily" attributable to the client, *id.* at 85, this is not an "ordinary" case. Like the federal courts, our speedy trial analysis is ad hoc. Each case is examined on its own facts. I find *Brillon* distinguishable. No one in this case has suggested that Ollivier's counsel's delay is attributable to the State because Ollivier's counsel was a public defender. And no one has suggested that Ollivier actively attempted to delay his own case. Those were the only questions at issue in *Brillon. Brillon* simply does not stand for the principle that, based on agency, the power to waive the right to a speedy trial belongs to the lawyer, not the client.

In this case, I find no fault with the defendant. Ollivier did demand a speedy trial, in at least 19 out of 22 continuances. He asserted his rights constantly, and even prepared a five page letter on the subject to the judge in October 2007 (seven months after his arraignment, with 16 months still to go before trial). CP at 271-

14

76. The record shows that Ollivier was constantly being assured trial was just around the corner, even as each continuance proved such assurances false. RP (June 15, 2007) at 5 ("I'm going to try and be ready by July."); RP (Nov. 30, 2007) at 27 ("Part of the judge's ruling in [the bond hearing] was based upon my assertion that the case would not be continued."); RP (Mar. 7, 2008) at 41 ("I am hoping that this is the last continuance."); RP (July 25, 2008) at 48 ("I have a confidence that this case can be tried in September."); RP (Sept. 5, 2008) at 50 ("This is a case that needs to be completed before I rotate out of my unit so it will be done by the first of the year."). Ollivier's frustration was apparent when he stated in January 2009 that "[Judge Gain] denied my bond hearing that I had in March because I was going to trial in May, guaranteed, were his promised words to me. This is far past May." RP (Jan. 21, 2009) at 9. We do not have any transcripts of the bond hearings, but this assertion was not corrected by Ollivier's attorney, who was present, and it is consistent with her previous statement that an earlier bond hearing had turned out the same way because of her assurance to the judge that trial was imminent.

The defendant himself did nothing to delay the case and, if anything, he strenuously objected to almost every continuance. To impute waiver of his speedy trial right to the defendant sitting in jail because his lawyer, appointed by the

government, is too busy, overworked, or simply fails to prepare, effectively strips from the defendant the affirmative constitutional right to a speedy trial. Or, at the very least, the court forces the defendant to waive his right to a speedy trial in order to preserve his right to effective assistance of counsel.

The majority argues that if a defendant's objections to continuances granted at defense counsel's request are counted as assertions of the defendant's speedy trial right, defense counsel and the defendant might collude to later obtain a reversal. I concede that is a concern. But it is a concern that should be dealt with on a case by case basis, not with a blanket rule that forces a defendant to waive a fundamental right. The majority proposes just such a blanket rule—that a defendant's "objections cannot be given effect when his own counsel sought the continuances to prepare for trial." Majority at 24. Otherwise, the majority explains, "Ollivier might have had a strong claim that the right to effective assistance of counsel had been denied." *Id.* At the risk of repetition, I emphasize that this is tantamount to the majority suggesting that Ollivier could not be permitted to assert his speedy trial right *because* he could then assert ineffective assistance of counsel.

Imagine a case, much like this one, where, each month, a defendant's court-appointed counsel requests a continuance over the defendant's objection. Defense

16

counsel, each month, asserts that she needs just one more month to prepare, and then she will be ready for trial. A one month delay does not seem unreasonable, and it may well be necessary for a fair trial and competent representation, so it is granted. Each motion in isolation may have merit. Incrementally, month after month, the case is continued. Incrementally, months become years. In a system where the appointed defenders are sometimes woefully underpaid and overworked, this approach in practice effectively guts the right to a speedy trial to save the right to effective assistance of counsel. The defendant is forced to give up the former right to receive the latter. Such a situation is simply unacceptable. We can and must do better. There is no claim of collusion between the defendant and his attorney in this case. I would find this factor weighs heavily in favor of the defendant.

> iv.  Fourth Factor: Prejudice

The importance of the speedy trial right is illustrated by the fourth and final factor in the *Barker* analysis. In *Iniguez*, we described the application of the final factor as follows: "Prejudice is judged by looking at the effect on the interests protected by the right to a speedy trial: (1) to prevent harsh pretrial incarceration, (2) to minimize the defendant's anxiety and worry, and (3) to limit impairment to the defense." *Iniguez*, 167 Wn.2d at 295 (citing *Barker*, 407 U.S. at 532). Thus,

the fourth factor shows exactly what interests a defendant must give up when the court forces the defendant to sacrifice his or her speedy trial right in order to receive effective assistance.

While impairment to the defense is "the most serious" of the three aspects of prejudice, we cannot discount prejudice to the other interests protected by the speedy trial right, as identified by the Supreme Court: prevention of oppressive pretrial incarceration and minimizing the anxiety and concern of the accused. *Barker*, 407 U.S. at 532. Because I believe the majority's analysis of these other two aspects of prejudice is seriously flawed, I address them first.

In this case, the defendant spent almost two years in jail awaiting trial. His anxiety and worry is apparent throughout the record. In *Barker*, the United States Supreme Court explained:

> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. *Imposing those consequences on anyone who has not yet been convicted is serious.* It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged

by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.

*Barker*, 407 U.S. at 532-33 (footnotes omitted) (emphasis added). The right to a speedy trial protects against pretrial incarceration and the anxiety that comes with the deprivation of personal liberty and complete loss of control over one's own fate. As the Supreme Court passage above makes clear, it does not operate, as the majority suggests, only when incarceration is particularly horrific or anxiety is particularly intense. To hold otherwise severely neuters the speedy trial right. Two years in jail is a long time by any measure, and the first two prongs of the prejudice analysis weigh in Ollivier's favor in this case.

Finally, the question remains whether Ollivier must show some prejudice to his defense to gain relief and, if so, whether he has shown any here. In this case, there was some evidence of prejudice because contested relevant facts were difficult to ascertain as a result of faded memories of police officers and the defendant. One of Ollivier's primary claims related to the failure of the officers who searched his home to give him a copy of the warrant. That claim depended on the memories of both the defendant and the officers. According to the Supreme Court, "[t]here is . . . prejudice if defense witnesses are unable to recall accurately events of the distant past." *Barker*, 407 U.S. at 532. According to the trial court's findings in this case, the "officers testified truthfully based on their memories, but

19

had no recollection of some of the events." CP at 229. As a result, the court could find only that "[t]he defendant probably expressed an interest in being shown a copy of the search warrant, and probably was shown a copy of the warrant." *Id.* This is enough to satisfy the third prong of the prejudice factor under the circumstances of this case.

## CONCLUSION

Ollivier remained incarcerated for 23 months while his trial was continued 22 times. Ollivier personally and sometimes strenuously objected to at least 19 of the continuances. The majority entirely dismisses Ollivier's objections and concludes that he must have waived his speedy trial right because otherwise, had his objections been sustained, he might have received ineffective assistance of counsel. I do not believe that is a choice courts can foist on defendants, nor do I think this court can sacrifice the right to a speedy trial in order to preserve the right to effective assistance of counsel. I therefore conclude Ollivier's speedy trial rights were violated. I would reverse the Court of Appeals and dismiss the charges against him.

Chambers, J.
by me

González, J.

Stephens, J.

Fairhurst, J.