FILED
COURT OF APPEALS
DIVISION II

2015 FEB 10 AM 8: 54

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44454-2-II |
| Appellant, | (Consolidated with No. 44460-7-II) |
| v. | |
| STEVEN LYNN FAGER, | UNPUBLISHED OPINION |
| Respondent. | |
| STATE OF WASHINGTON, | |
| Appellant, | |
| v. | |
| TIMOTHY JAY FAGER, | |
| Respondent. | |

JOHANSON, C.J. — The State appeals a trial court's order dismissing the manufacturing and distributing marijuana charges against Steven Fager and Timothy Fager. The trial court dismissed the case after suppressing key evidence when it found that members of the Olympic Peninsula Narcotics Enforcement Team (OPNET) members made false claims to obtain search warrants and mismanaged evidence. The State argues that the trial court (1) erred by failing to

conduct a *Frye*[1] hearing for a defense expert's testimony regarding marijuana odor, (2) abused its discretion under ER 702 when it allowed the defense expert to testify, (3) incorrectly applied the rules in a *Franks*[2] hearing, (4) erred by suppressing certain evidence from a thermal image search, and (5) erred by concluding that the warrant affidavits no longer supported probable cause absent the suppressed evidence.

We hold that the State failed to preserve its *Frye* challenge and its ER 702 challenge for review. We hold further that the trial court (1) correctly found that OPNET recklessly disregarded the truth, (2) did not abuse its discretion by suppressing all of the evidence from the thermal image search, and (3) properly ordered dismissal because the search warrant affidavits no longer established probable cause absent the suppressed evidence. Accordingly, we affirm the trial court's order of dismissal.

FACTS

I. BACKGROUND

In 2007, OPNET began to suspect that Steven[3] grew and distributed marijuana. Through its surveillance efforts, OPNET also connected Timothy and Albert Sullivan to the suspected operation. In 2009, OPNET commenced surveillance on the Fagers' personal residences and on a shop located at 115 Freeman Lane in Port Townsend (115 Freeman). The shop was the property of a business owned by Sullivan and the Fagers. While they watched 115 Freeman, members of

---

[1] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

[2] *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

[3] Where necessary, we refer to Steven and Timothy by their first names for clarity, intending no disrespect. We also refer to Steven and Timothy collectively as "the Fagers."

OPNET reported that they had smelled strong odors of marijuana on several occasions. The OPNET detectives claimed that it was apparent that the odor was emanating from the shop and not from two nearby residences. OPNET sought and obtained a warrant to examine utility records for 115 Freeman as well as a warrant to conduct a thermal imaging search on the shop.

OPNET executed the thermal imaging warrant using a thermal imaging device that also recorded and fed video to a remote monitor. OPNET members again reported an odor of marijuana coming from inside the shop. According to OPNET, the thermal imaging revealed suspicious heat activity consistent with indoor marijuana grow operations. This fact, along with apparently abnormal utility consumption, prompted OPNET to apply for a warrant to enter and search 115 Freeman. OPNET obtained and executed this warrant, discovering a sophisticated marijuana grow operation.

## II. PROCEDURE

The State charged the Fagers with one count of manufacturing marijuana and one count of possession with intent to deliver marijuana. The cases were consolidated for trial. Before trial, the Fagers filed a motion to suppress the evidence discovered in the search of 115 Freeman pursuant to CrR 3.6 and CrR 8.3(b). The motion also included a request for a *Franks* hearing to challenge OPNET's allegations that they could smell growing marijuana from long distances. The trial court incorporated a *Franks* hearing into the CrR 3.6 hearing.

To challenge OPNET's claims, the Fagers called Dr. James Woodford as an expert on marijuana odor. Before the hearing began, the State filed a motion in limine to exclude Dr. Woodford's testimony. The State questioned the extent of Dr. Woodford's credentials. The State's position was that Dr. Woodford had no formal training in the detection of marijuana or the

effect that vegetation and wind currents would have on a person's ability to detect an odor. The State also argued that Dr. Woodford had no credentials that would justify his testifying as an expert on ventilation and filtration systems.

When it argued its motion, the State contended that Dr. Woodford should not be allowed to testify because his credentials did not establish that he was qualified to testify as an expert and because his theories lacked scientific support. But the State never requested a *Frye* hearing. The trial court reserved ruling on the motion.

At the hearing,[4] the Fagers called Dr. Woodford to testify regarding marijuana odor. The State did not object to Dr. Woodford's testimony. Dr. Woodford explained that the molecular structure of the odor of growing marijuana was such that the odor did not travel far before breaking down and that, therefore, it was impossible for a human to detect beyond a certain distance. Because OPNET members were, by their own admission, as far as 100 yards away,[5] Dr. Woodford concluded that it was not humanly possible to smell growing marijuana from where the officers claimed they were located. In Dr. Woodford's opinion, it was unlikely that the odor could be detected from 40 to 50 feet away and virtually impossible at 60 feet. Dr. Woodford also opined regarding how the marijuana odor would be affected by the use of filtration devices. Finally, Dr. Woodford explained that even if OPNET members had detected an odor of marijuana, the nature

---

[4] We refer to the nine-day *Franks*/CrR 3.6 hearing combination simply as "the hearing" unless specificity is necessary. The trial court incorporated these two motions, among other things, into one hearing. It then entered a series of written findings and conclusions based on everything the court had heard.

[5] The record is somewhat unclear, but it appears that OPNET was never closer than 130 feet away from 115 Freeman.

of the odor precludes it from having "directionality," meaning that there would be no way for a person to identify the source of the odor with any certainty.

After a nine-day pretrial hearing wherein the parties addressed numerous issues, the trial court ruled in favor of the Fagers regarding the *Franks* motion. The court found that OPNET officers made false statements concerning their ability to detect the odor of marijuana, and therefore ruled that they had made such statements in reckless disregard for the truth. The trial court struck the "smell evidence" from both the thermal image warrant and the 115 Freeman search warrant application and concluded that the warrants were no longer supported by probable cause. All evidence seized as a result of those searches was suppressed, and the trial court signed an order of dismissal on that basis.

Moreover, the trial court also found governmental mismanagement under CrR 8.3(b) because the video recordings of the thermal image search had apparently been destroyed despite numerous attempts by the defense to obtain them. Accordingly, the trial court suppressed all evidence relating to the thermal image search on this basis as well. Finding that there was no longer probable cause to support the warrants, the trial court entered an order dismissing the case. The State appeals.

ANALYSIS

I. ADMISSIBILITY OF EXPERT TESTIMONY

A. FAILURE TO CONDUCT *FRYE* HEARING

The State contends that the trial court erred by failing to conduct a *Frye* hearing before permitting Dr. Woodford to testify as to his theories regarding the detection of marijuana odor. We agree with the Fagers that the State failed to preserve this issue for review.

Review of admissibility under *Frye* is de novo and involves a mixed question of law and fact. *State v. Copeland*, 130 Wn.2d 244, 255, 922 P.2d 1304 (1996). The rationale underlying the *Frye* test is that expert testimony based on novel scientific theory is admissible only if it is generally accepted in the relevant scientific community. *State v. Wilbur-Bobb*, 134 Wn. App. 627, 632, 141 P.3d 665 (2006). But a *Frye* challenge is not preserved for review on appeal when there is no objection before the trial court. *Wilbur-Bobb*, 134 Wn. App. at 632.

The State asserts that it raised the *Frye* issue in its prehearing motion in limine discussed below. While it is true that the purpose of a motion in limine is to avoid a requirement that counsel object to contested evidence when that evidence is presented at trial, a party only maintains a standing objection to the extent that a trial court has made a final ruling. *State v. Powell*, 126 Wn.2d 244, 256, 893 P.2d 615 (1995). Where, as here, a "trial court refuses to rule, or makes only a tentative ruling subject to evidence developed at trial, the parties are under a duty to raise the issue at the appropriate time with proper objections at trial." *State v. Koloske*, 100 Wn.2d 889, 896, 676 P.2d 456 (1984), *overruled on other grounds by State v. Brown*, 111 Wn.2d 124, 761 P.2d 588, 787 P.2d 906 (1988).

Here, the State moved in limine to exclude Dr. Woodford's testimony, questioning the extent of his credentials and training. The State contended that Dr. Woodford should not be allowed to testify because his credentials did not establish that he was qualified to testify as an expert and because his theories lacked scientific support. Regarding Dr. Woodford, the following exchange occurred:

> [THE STATE]: . . . *I know you're going to reserve it*, but I want to make sure you're really clear on the State's position on this.
>
> . . . .
>
> [THE STATE]: . . . He's idiosyncratic. And this is an area where – I don't know how idiosyncratic he is in all things – but he has made this up. He has no scientific support for it. I always forget the name of that rule, but it has to be something that's accept– generally accepted in the scientific community. I can't remember the name of it.
> THE COURT: The *Frye* standard?
> [THE STATE]: *Frye* standard. He has nothing to support the testimony. Nothing in his background anywhere that he's ever done this. . . .
> THE COURT: Well, to me, the defense is going to have to lay a foundation for his testimony when he's here. And so, when that time comes, I'll have to hear it and determine whether his testimony is relevant or not.

1 Report of Proceedings (RP) at 41-44. Thus, the State only raised an objection to foundation, and while the State mentioned *Frye* by name, it never specifically objected on the basis of *Frye* when the time came for Dr. Woodford to testify nor did it request a *Frye* hearing.

*Wilbur-Bobb* is instructive here. There, the defense lodged an objection as to foundation when the State's expert toxicologist testified regarding the theory of "retrograde extrapolation." 134 Wn. App. at 633. Wilbur-Bobb argued,

> "He's read articles. I can read articles as to what to testify to as a toxicologist. He said he has two days total of training in this area. I don't have any information or any indication that this is scientifically accepted. We don't have any model or any information as to that. We don't know what specific articles he's read."

7

*Wilbur-Bobb*, 134 Wn. App. at 633. On appeal, Wilbur-Bobb claimed that these objections preserved a *Frye* challenge for appeal. *Wilbur-Bobb*, 134 Wn. App. at 633. Division One of this court concluded that, in context, Wilbur-Bobb did not contest the proposition that retrograde extrapolation is generally accepted because Wilbur-Bobb did not request a hearing on that issue nor did she ask the court to clarify whether its ruling was intended to encompass that issue. *Wilbur-Bobb*, 134 Wn. App. at 634. The court held that the objection did not preserve a *Frye* issue because Wilbur-Bobb's challenge was essentially to the credentials of the expert, and "[w]e will not allow an objection to credentials to be transformed into a *Frye* argument on appeal." *Wilbur-Bobb*, 134 Wn. App. at 634.

Here, even if the State's preliminary objection to Dr. Woodford's testimony did constitute a timely objection like those in *Wilbur-Bobb*, the State never specifically requested a hearing on the issue of the acceptance of Dr. Woodford's theory in the scientific community. Beyond its objection regarding a lack of foundation, the State never contested the proposition that the theory was generally accepted in the scientific community. Rather, the State conducted voir dire of Dr. Woodford during his testimony and said,

> I have found nothing in anything that you've written or that anybody else has written that indicates that you have any qualifications on telling how far marijuana will go in the air under open conditions.

3 RP at 49. Accordingly, the State's objection, if any, was to whether Dr. Woodford had the requisite expertise to support his testimony.

Moreover, the State cross-examined Dr. Woodford but asked no questions about whether his theory had or had not gained general acceptance in the scientific community. Consequently, because the State did not specifically request a *Frye* hearing and because an objection to the

8

expert's credentials does not transform into a *Frye* argument on appeal, we hold that the State failed to preserve a *Frye* challenge for review.

## B. APPLICATION OF ER 702

The State argues further that, notwithstanding the *Frye* issue, the trial court nevertheless erred when it allowed Dr. Woodford to testify as an expert under ER 702. Again, we agree with the Fagers and hold that the State failed to preserve this issue for review for the same reasons set forth in the preceding section.

A decision to admit expert testimony under ER 702 is reviewed for abuse of discretion. *State v. Baity*, 140 Wn.2d 1, 9-10, 991 P.2d 1151 (2000). Abuse of discretion exists when a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons. *Powell*, 126 Wn.2d at 258.

As a threshold matter, we note that the State did not object throughout the duration of Dr. Woodford's testimony regarding his theory that the chemical makeup of the odor of marijuana is not capable of being detected at the distances claimed by members of OPNET. The State raised its sole objection when Dr. Woodford explained the impact that a sophisticated charcoal filtration system would have on the ability to detect the marijuana odor. After the State objected, the court asked the Fagers to lay a foundation. Dr. Woodford then discussed his extensive experience with charcoal filtration systems. The State did not object further.

The State appears to rely on its motion in limine to exclude Dr. Woodford's testimony in support of the proposition that it had a standing objection to Dr. Woodford's status as an expert. But as explained above, the trial court reserved it's ruling until Dr. Woodford testified, giving the defense the opportunity to lay a proper foundation. After the defense laid its foundation, the State

had a duty to raise the issue at the appropriate time with proper objections. *Koloske*, 100 Wn.2d at 896. Consequently, the State's failure to object to Dr. Woodford's testimony regarding marijuana odor detection constitutes a failure to preserve that issue on appeal. *Powell*, 126 Wn.2d at 257.

## II. *FRANKS* HEARING

Next, the State argues that the trial court committed reversible error when it found that OPNET members recklessly disregarded the truth by virtue of a "totally incorrect" application of the *Franks* test. The State argues that the trial court applied the *Franks* test incorrectly because the court found that OPNET members recklessly disregarded the truth but did not find that they intentionally made a knowingly false statement to the magistrate regarding their detection of the marijuana odor. We hold that the trial court properly applied the *Franks* standard, the record supports the trial court's findings, and the trial court did not err by determining that OPNET members recklessly disregarded the truth about the marijuana odor they were able to detect. Accordingly, the trial court properly struck that evidence from the warrant affidavit.

"A search warrant may be invalidated if material falsehoods were included in the affidavit intentionally (deliberately) or with reckless disregard for the truth or if there were deliberate or reckless omissions of material information from the warrant." *State v. Ollivier*, 178 Wn.2d 813, 847, 312 P.3d 1 (2013), *cert. denied*, 135 S. Ct. 72 (2014). If the defendant makes a substantial preliminary showing of such a material misrepresentation or omission, the defendant is entitled to a *Franks* evidentiary hearing. *Ollivier*, 178 Wn.2d at 847. If the defendant then establishes the allegations, the material misrepresentation must be stricken and the sufficiency of the affidavit then assessed as so modified. *State v. Cord*, 103 Wn.2d 361, 367, 693 P.2d 81 (1985). Great

deference is to be given to the trial court's factual findings because it alone has had the opportunity to view the witness's demeanor and to judge his veracity. *Cord*, 103 Wn.2d at 367.

Here, due largely to Dr. Woodford's testimony, the Fagers made the requisite preliminary showing that OPNET members made material misrepresentations regarding their ability to detect the marijuana odor. The trial court then found that OPNET members did not smell marijuana from the locations claimed in the affidavit for the search warrant in reckless disregard of the truth.

The State relies primarily on *State v. Seagull*, 95 Wn.2d 898, 632 P.2d 44 (1981), in support of the proposition that the trial court's finding of reckless disregard was necessarily erroneous because such a finding cannot be supported if OPNET members were merely mistaken as to their belief that they smelled marijuana emanating from 115 Freeman. In *Seagull*, our Supreme Court declined to quash a search warrant where a police officer observed a tomato plant in plain view that he mistook for a marijuana plant. 95 Wn.2d at 900. The *Seagull* court so held because allegations of negligence or innocent mistake are insufficient to rise to the level of reckless disregard for the truth that would require the voiding of a warrant. 95 Wn.2d at 908.

But here, the State ignores the fact that our courts have concluded that reckless disregard can be shown where the affiant "'in fact entertained serious doubts as to the truth of facts or statements in the affidavit.'" *State v. Chenoweth*, 127 Wn. App. 444, 456, 111 P.3d 1217 (2005) (internal quotation marks omitted) (quoting *State v. Clark*, 143 Wn.2d 731, 751, 24 P.3d 1006, *cert. denied*, 534 U.S. 1000 (2001)), *aff'd*, 160 Wn.2d 454, 158 P.3d 595 (2007). And "serious doubts" can be shown either by (1) actual deliberation on the part of the affiant or (2) the existence of obvious reasons to doubt the veracity of the informant or the accuracy of his reports. *Clark*, 143 Wn.2d at 751. This position is consistent with the fact that the Fourth Amendment does not

proscribe "'inaccurate searches,'" only "'unreasonable ones.'" *Seagull*, 95 Wn.2d at 908 (quoting

Kipperman, *Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence*, 84

HARV. L. REV. 825, 832 (1971)).

It is evident from the language of the trial court's written finding that the court considered

the possibility of a reasonable mistake. Finding 11 provides,

> The court is aware that a simple mistake will not invalidate a warrant under *Franks v. Delaware*, 438 U.S. 154[, 98 S. Ct. 2674, 57 L. Ed. 2d 667] (1985). If this was simply one "nose hit" of marijuana at an impossible distance, the Court might be more inclined to treat this a reasonable mistake, or that perhaps the officers were smelling marijuana growing from some other location. But given the number of "nose hits" claimed at multiple locations, all of which are impossible distances from the shed, this Court has no option but to treat these statements as demonstrating a reckless disregard for the truth."

1 CP at 190. Based on this conclusion, the court then found that all references to the smell of

marijuana must be stricken from the affidavit of both the thermal image warrant and the search

warrant for 115 Freeman. It is clear from the trial court's finding that, in its view, obvious reasons

existed to doubt the veracity of the OPNET members. Given the deference afforded to the trial

court's determination, we hold that the trial court did not commit reversible error by finding that

OPNET members recklessly disregarded the truth in the search warrant affidavits for the foregoing

reasons.[6]

---

[6] We also note that the State conceded during the presentation of the trial court's findings of fact and conclusions of law that "if the smell of marijuana is removed from this, then there's nothing left to go forward on." 10 RP at 49.

### III. REMAINING EVIDENCE SUPPORTING WARRANTS

The State next contends that the trial court should not have suppressed all evidence associated with the thermal image search solely because it suppressed the video recording evidence because of government mismanagement pursuant to CrR 8.3(b). We agree with the Fagers that the trial court did not abuse its discretion by suppressing the "smell evidence," and that probable cause was nonexistent absent that evidence.

When reviewing the trial court's grant of a CrR 3.6 suppression motion, we determine whether substantial evidence supports the challenged findings of fact and whether the findings of fact support the conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). "Evidence is substantial when it is enough 'to persuade a fair-minded person of the truth of the stated premise.'" *Garvin*, 166 Wn.2d at 249 (quoting *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)). Unchallenged findings of fact are considered verities on appeal. *State v. Lohr*, 164 Wn. App. 414, 418, 263 P.3d 1287 (2011). We review de novo the trial court's conclusions of law pertaining to the suppression of evidence. *Garvin*, 166 Wn.2d at 249. Findings of fact mislabeled as conclusions of law are treated as findings of fact on review. *State v. Ross*, 141 Wn.2d 304, 309, 4 P.3d 130 (2000).

As part of its ruling, the trial court found that evidence obtained from the video recording of the thermal image search and all other information obtained in the execution of that warrant must be suppressed because OPNET's negligent or intentional destruction of this evidence

13

constituted government mismanagement under CrR 8.3(b).[7] Pursuant to CrR 8.3(b), a trial court may either dismiss a criminal prosecution due to arbitrary action or government mismanagement, or, if dismissal is not warranted, it may suppress evidence to eliminate the prejudice caused by the governmental misconduct. *City of Seattle v. Holifield*, 170 Wn.2d 230, 237, 240 P.3d 1162 (2010).

Here, the trial court concluded that the proper remedy was suppression of the evidence rather than dismissal. The State's argument is that evidence other than the video recording secured by OPNET during the execution of the thermal image search should not have been suppressed. But the State ignores the fact that the trial court made this finding and subsequently reached the associated conclusion independently of its determination that all "smell evidence" must be stricken from the affidavit because of OPNET's reckless disregard for the truth. The trial court's findings provide,

> 5. The Court finds that the primary justification for obtaining the thermal imagery warrant was the officer's claim that they could smell the marijuana from various locations around the property. Because the Court finds that these assertions were made with a reckless disregard for the truth, they must be stricken from the affidavit in support of the warrant. When this is done, there is no probable cause to support the thermal warrant. Any evidence flowing from the issuance of that warrant must be suppressed.
>
> 6. Independent of the lack of probable cause, this Court finds that the results of the thermal imagery warrant must be suppressed on the basis of mismanagement.

---

[7] CrR 8.3(b) provides,
> **On Motion of Court.** The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

14

1 CP at 191. Because the State does not challenge these findings, they are verities. *Lohr*, 164 Wn. App. at 418. We hold that the State's claim fails.

## IV. PROBABLE CAUSE NOT ESTABLISHED

Finally, the State contends that probable cause exists to support each warrant authorizing searches of 115 Freeman notwithstanding the suppression of all of the "nose hits" or "smell evidence." The State grounds this argument on the existence of the relationship between the Fagers and Sullivan. The argument appears to be that because OPNET had a significant amount of information tying Sullivan to the sale of marijuana and because Sullivan was the Fagers' business partner and co-owner of 115 Freeman, there was sufficient information for the magistrate to issue warrants to "find the source of the marijuana that Al Sullivan was selling." Br. of Appellant at 48. This argument lacks merit.

Probable cause exists where there are facts and circumstances sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). Accordingly, probable cause requires a nexus between criminal activity and the item to be seized and also a nexus between the item to be seized and the place to be searched. *Thein*, 138 Wn.2d at 140.

Here, absent OPNET's claim that it could smell marijuana emanating from 115 Freeman, there is no evidence in the record that provides the requisite nexus between a suspected marijuana grow operation and 115 Freeman. The fact that OPNET designated Sullivan and the Fagers as persons of interest in its investigation, combined with the fact that all three men had been seen

15

going to and from 115 Freeman, does not by itself establish that criminal activity can be found there. We so hold and affirm the trial court's order dismissing the case.[8]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

MAXA, J.

SUTTON, J.

---

[8] The State also argues that the magistrate had sufficient information to issue the utility consumption search warrant, but the trial court made no findings of fact or conclusions of law regarding abnormal utility consumption.

16