# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  58857-9-II |
| Respondent, | |
| v. | |
| ZACHARY RYAN ROSENTHAL, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, P.J. — Zachary R. Rosenthal appeals his convictions on three counts of vehicular assault and one count of felony hit and run.  Rosenthal argues that the trial court abused its discretion by denying his CrR 8.3 motion to dismiss for government mismanagement when there was an eight-day delay in appointing him trial counsel after his second attorney withdrew due to a conflict of interest.  Rosenthal also raises several arguments in a statement of additional grounds (SAG).[1]  We affirm Rosenthal's convictions.

## FACTS

Rosenthal caused a collision by veering his pickup truck into oncoming traffic and striking a car with three people in it.  Rosenthal then fled the scene.  Rosenthal was on methamphetamine

---

[1]  RAP 10.10.

at the time. The State charged Rosenthal by amended information with three counts of vehicular assault while under the influence and one count of felony hit and run.[2]

A.     PRELIMINARY PROCEEDINGS

Rosenthal was appointed his first attorney at a preliminary hearing on May 30, 2023. The first attorney represented Rosenthal at his arraignment on an amended information on June 8, where Rosenthal attempted to raise a speedy arraignment objection, but his first attorney informed Rosenthal that there was no violation. Rosenthal's trial was set for the week of July 24.

At an omnibus hearing on June 29, Rosenthal raised a conflict of interest issue relating to his first attorney. The trial court instructed Rosenthal to file a motion on the issue.

On July 6, Rosenthal filed a pro se motion for new counsel, claiming that the first attorney had testified against him in a prior bail jumping case. On July 13, at the hearing on Rosenthal's motion, the first attorney explained that he answered questions from the trial court in a prior case, and he stated that he had already spoken to all but one of the witnesses in Rosenthal's current case, discussed every aspect of the case with Rosenthal, and was ready to proceed to trial in Rosenthal's current case. At Rosenthal's insistence, the trial court directed the first attorney to withdraw and appointed Rosenthal new counsel. Rosenthal's second attorney was appointed the next day.

At a hearing on July 27, Rosenthal's second attorney informed the court that Rosenthal told him that "he would be claiming that someone else committed a particular crime." 4 Verbatim Rep. of Proc. (VRP) (July 27, 2023) at 30. That other person was also the second attorney's client,

---

[2] Rosenthal also had a warrant for being a fugitive from justice in Oregon. The fugitive case was linked to this case, but at sentencing on this case, the State dismissed the fugitive charge based on the lengthy sentence Rosenthal received in this case.

which created a conflict of interest for the attorney. Accordingly, the second attorney asked to be allowed to withdraw from Rosenthal's case. Due to the conflict, the trial court allowed the second attorney to withdraw, which reset Rosenthal's time for trial under CrR 3.3 to expire on September 25, 2023, 60 days later.

At a hearing on August 2, Lewis County's defense coordinator explained to the trial court that Rosenthal had conflicts with all of the attorneys who had public defense contracts in Lewis County, so she was attempting to hire an attorney from outside that contracted attorney pool to represent Rosenthal. This attorney, Rosenthal's third, was on vacation at the time. Rosenthal orally moved to dismiss his case, but the court declined to consider this motion until Rosenthal had counsel assigned or formally decided to proceed as a self-represented litigant.

On August 3, the third attorney (trial counsel) accepted the appointment to represent Rosenthal but, due to still being out of town, could not appear until August 17. The public defense coordinator explained this situation to the trial court in a hearing on August 4. Rosenthal objected to the delay in appointing counsel and argued that the case should be dismissed. The trial court observed that the delay was primarily caused by conflicts of interest with the County's panel of attorneys and the fact that "[i]t takes time to find people outside our panel." 4 VRP (Aug. 4, 2023) at 48. On August 7, Rosenthal filed a pro se CrR 8.3(b) motion to dismiss his case for government misconduct due to the public defense coordinator's delay in appointing him counsel.

When Rosenthal's trial counsel appeared on August 17, the deadline for Rosenthal's CrR 3.3 time for trial was set to expire on September 25, 2023. The trial court tried to set trial for the week before that expiration date, but trial counsel had scheduling conflicts for much of September

3

and observed that there were over 500 pages of discovery in the case. Rosenthal objected to waiving his right to a speedy trial. As a result of the tension between trial counsel's ability to perform effectively and Rosenthal's refusal to continue the trial date, trial counsel asked the court to hear Rosenthal's CrR 8.3(b) motion to help determine the outcome of the case because trial counsel did not believe that he could represent Rosenthal effectively at any trial set in September 2023. Rosenthal addressed the trial court directly to ask the court to dismiss his case due to the gap in representation between his second attorney and trial counsel.

B.      CrR 8.3 HEARING

At the hearing on the CrR 8.3(b) motion to dismiss, Rosenthal's trial counsel presented Rosenthal's arguments. The motion was based on CrR 3.1, which requires a defendant to be represented at every stage of proceedings. Rosenthal argued that the fact he lacked assigned counsel from July 27 to August 3 constituted government mismanagement that required the dismissal of his case. Rosenthal also argued that his second attorney should not have been removed despite his conflict of interest, or that a "temporary attorney" should have been appointed until new permanent defense counsel could be assigned. 1 VRP (Aug. 22, 2023) at 22. And Rosenthal argued that he was prejudiced because his trial counsel could not effectively prepare for trial between his return from vacation and the expiration of Rosenthal's speedy trial right.

The State responded that Rosenthal was represented at every critical stage of proceedings and could not demonstrate any violation of rights, so the lack of an attorney for about eight days did not prejudice him. The State also emphasized that any error was due to the County's public defense program, not from misconduct by the State or trial court.

The trial court denied the CrR 8.3 motion in an oral ruling. The court agreed with the State that "there's nothing the State did on this case to create whatever problems Mr. Rosenthal has." 1 VRP (Aug. 22, 2023) at 26. The court observed that Rosenthal's second attorney properly withdrew when he discovered a conflict of interest, which reset the CrR 3.3 time for trial time limit. And the trial court cited Rosenthal's other conflicts of interest for the difficulty in appointing new counsel:

> With regard to the argument that there should have been some other attorney appointed. Well, that's the problem, Mr. Rosenthal, that you created in part by rejecting counsel who were ready, willing, and able. Because there's a limited number of people on this contract, and because of the criminal history that you have, everybody else has a conflict because of other people that are involved in this case, because either they represented you or represented potential victims or potential witnesses in this case. Everybody had a conflict.
>
> So that's what was explained to me from the Public Defense Coordinator. And so they had to go outside the contract, and that's how [trial counsel] became involved with the case.
>
> So at this point, now you have your third attorney on this case, and it's going to be up to you as to how you deal with this. But I'm not dismissing it based on this motion.

1 VRP (Aug. 22, 2023) at 27. Rosenthal then addressed the court, arguing that the second attorney should have been allowed to continue on his case. The trial court explained that allowing the second attorney to continue representing Rosenthal would have violated the Rules of Professional Conduct.

Trial counsel then asked the trial court to continue trial until October, over Rosenthal's objection, so that trial counsel had time to prepare. The trial court found good cause to grant a continuance:

> Here's what I'm going to do, based on the fact that we have outside counsel not on the contract, that he was gone on vacation, that he was put behind and he couldn't start. If we force this trial and if you're convicted, it ends up being an automatic reversal in any effect.
>
> I'm going to find good cause to continue this, noting your objection for the record, so it's clear. And I'm going to find good cause to continue this to the week of October 16th.

1 VRP (Aug. 22, 2023) at 33. This ruling extended Rosenthal's time for trial deadline to November 11.

C.    TRIAL, VERDICT, AND SENTENCING

Rosenthal waived his right to a jury trial, and the case proceeded to a bench trial on stipulated facts in October. Rosenthal agreed to the bench trial on stipulated facts so that he could preserve his objection to the CrR 8.3 ruling. The trial court convicted Rosenthal of all counts and imposed a sentence of 84 months, the top of the standard sentencing range.

Rosenthal appeals.

ANALYSIS

A.    CrR 8.3(b) MOTION

Rosenthal argues that the trial court abused its discretion by denying his CrR 8.3(b) motion. Specifically, Rosenthal contends that the eight-day delay in appointing him new counsel after his second attorney withdrew denied him his right to effective assistance of counsel, his constitutional right to a speedy trial, and his right to a timely trial under CrR 3.3. Rosenthal asserts that the time in which he was represented by his second attorney is also part of a longer delay, totaling 27 days, during which he was without "conflict free" counsel. Br. of Appellant at 28. Rosenthal asserts

6

that the trial court abused its discretion by finding good cause to continue the trial, and that this continuance prejudiced him by violating his right to a speedy trial.

The State responds that the trial court did not abuse its discretion by denying the CrR 8.3 motion. In part, the State argues that the County's public defense coordinator is not a governmental agency for the purposes of government mismanagement under CrR 8.3. The State asserts that Rosenthal did not suffer a violation of his time for trial right under CrR 3.3. The State also contends that Rosenthal was not prejudiced in his ability to prepare his case.

1.      Right to Counsel

We first address whether the delay in appointing counsel deprived Rosenthal of his constitutional right to counsel. Rosenthal argues that he "[p]ractically . . . went without counsel" from his *first* attorney's removal in mid-July until trial counsel *appeared* in mid-August. Br. of Appellant at 29. Rosenthal asserts that he "could not talk to counsel, discuss strategy, relay information about the case, or negotiate a plea" during this time, and that his attempts to view his discovery and file motions with the court were rebuffed while he waited for new counsel. Br. of Appellant at 29.

Both the state and federal constitutions guarantee criminal defendants the right to the effective assistance of counsel. U.S. CONST., amend VI; WASH. CONST., art. 1, § 22. And Washington's court rules require that a defendant be provided a lawyer "at every stage of proceedings." CrR 3.1(b)(2)(A). But "not all pretrial hearings are critical stages" where the lack of counsel violates a defendant's constitutional rights. *State v. Heng*, 2 Wn.3d 384, 392, 539 P.3d 13 (2023). "To determine whether a given hearing was a critical stage on review, we must examine

7

a hearing's 'substance and not merely [its] form.'" *Id.* (quoting *State v. Jackson*, 66 Wn.2d 24, 28, 400 P.2d 774 (1965)). In general, hearings that lack an adversarial component are not critical stages. *See id.* at 393 (listing case examples).

Here, Rosenthal had counsel until July 27, when his second attorney had to withdraw because Rosenthal's defense created a conflict of interest with another client. Trial counsel was appointed eight days later, on August 3. As discussed above, there is no allegation that Rosenthal's second attorney performed deficiently before the conflict of interest was discovered. Therefore, Rosenthal lacked appointed counsel for only eight days.

Furthermore, the hearings where Rosenthal appeared without counsel were both perfunctory appearances where the public defense coordinator explained to the trial court the difficulties in finding non-conflicted counsel for Rosenthal and the reasons for trial counsel's delay in appearing. Therefore, even though Rosenthal attempted to present pro se motions to dismiss his case at these hearings and was rebuffed, these brief administrative hearings about the challenges of appointing Rosenthal counsel were not critical stages where the right to counsel attached. Because the hearings and the time between them were not a critical stage, Rosenthal's constitutional right to counsel was not violated by his lack of appointed counsel during this brief period.

Rosenthal submitted an additional authority directing this court's attention to a Ninth Circuit Court of Appeals case where a group of Oregon defendants sought an injunction requiring their release if they were not appointed counsel within two days of their initial appearance or previous counsel's withdrawal. *Betschart v. Oregon*, 103 F.4th 607, 614 (9th Cir. 2024). The

district court granted the injunction, requiring appointment of counsel within seven days of the defendants' initial appearances or the withdrawal of prior counsel, and the Ninth Circuit affirmed. *Id.* at 614, 628. *Betschart* addresses a crisis in Oregon's entire public defense system. *Id*. at 613. While *Betschart* is informative, the delay in appointing Rosenthal counsel in this case was not because Lewis County lacked public defenders in the first place, but because Rosenthal had conflicts with them and the attorney outside of the county's pool of contracted attorneys was on vacation when contacted.

We note that courts have previously considered the actions of the trial court in weighing a CrR 8.3(b) motion. *See State v. Teems*, 89 Wn. App. 385, 389-90, 948 P.2d 1336 (1997) (observing that the trial court "could not" reappoint the attorney who was familiar with Teems' case and had to appoint new counsel, contributing to the delay), *review denied*, 136 Wn.2d 1003 (1998). But even assuming without deciding that the public defense coordinator's eight-day delay in appointing Rosenthal counsel constituted government mismanagement under CrR 8.3(b), Rosenthal must also show prejudice, meaning that the mismanagement jeopardized his fundamental right to a speedy trial or to effective assistance of counsel. *Id*. at 388-89. As discussed herein, Rosenthal fails to do so.

2.      Speedy Trial/Time for Trial

"The court, in the furtherance of justice, after notice and hearing,  may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial."  CrR 8.3(b). "We review the trial court's decision to deny a motion to dismiss under CrR 8.3 for abuse of

9

discretion, that is, whether the decision was manifestly unreasonable, based on untenable grounds, or made for untenable reasons." *State v. Kone*, 165 Wn. App. 420, 433, 266 P.3d 916 (2011), *review denied*, 173 Wn.2d 1034 (2012).

"In order for a court to dismiss charges under CrR 8.3(b), the defendant must show arbitrary action or governmental misconduct," and that misconduct or mismanagement must prejudice the defendant. *Teems*, 89 Wn. App. at 388. Mismanagement that "jeopardizes a fundamental right of the accused," such as the right to a speedy trial or effective assistance of counsel, may support a decision to dismiss. *Id.*

a. Constitutional speedy trial

Both the state and federal constitutions guarantee criminal defendants the rights to a speedy trial. U.S. CONST., amend VI; WASH. CONST., art. 1, § 22. While Washington's court rules require a defendant held in custody to be brought to trial within 60 days, "[t]rial within 60 days is not a constitutional mandate." *State v. Campbell*, 103 Wn.2d 1, 15, 691 P.2d 929 (1984), *cert. denied*, 471 U.S. 1094 (1985); CrR 3.3(b)(1)(i).

Washington uses the balancing test set out in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), to determine whether a constitutional speedy trial violation has occurred. *State v. Ollivier*, 178 Wn.2d 813, 827, 312 P.3d 1 (2013), *cert. denied*, 574 U.S. 834 (2014). "Among the nonexclusive factors to be considered are the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *Id.* (quoting *Barker*, 407 U.S. at 530). "None of these factors is sufficient or necessary to a violation" by itself,

and courts consider the conduct of both the prosecution and the defendant when conducting the balancing test. *Id*.

"To trigger the analysis under *Barker*, the defendant must make a threshold showing that the time between the filing of charges and trial exceeded the ordinary interval for prosecution and crossed into presumptively prejudicial delay." *State v. Ross*, 8 Wn. App. 2d 928, 942, 441 P.3d 1254, *review denied*, 194 Wn.2d 1008 (2019). "In other words, the length of the delay is both the trigger for the *Barker* analysis and the first factor in that analysis." *Id*. Delays of years or decades are clearly sufficient to trigger the speedy trial inquiry. *Id*. at 942-43. But while long pretrial delays may certainly trigger the speedy trial analysis, this factor may still weigh against the defendant if "the bulk of the continuances were sought by defense counsel to ensure adequate preparation." *State v. Hatt*, 11 Wn. App. 2d 113, 153, 452 P.3d 577 (2019), *review denied*, 195 Wn.2d 1011 (2020); *see Ollivier*, 178 Wn.2d at 831.

In considering the reasons for the delay, we assess "[e]ach party's role in, and level of responsibility for, the delay." *State v. Nov*, 14 Wn. App. 2d 114, 130, 469 P.3d 352 (2020), *review denied*, 196 Wn.2d 1034 (2021). This factor "is the focal point of the balancing analysis." *Ross*, 8 Wn. App. 2d at 944. Determination of the weight for each reason is "primarily related to blameworthiness and the impact of the delay on [the] defendant's right to a fair trial." *Ollivier*, 178 Wn.2d at 831. While "the State has some obligation" to bring a defendant to trial, "the focal question is whether the State's actions were diligent." *Nov*, 14 Wn. App. 2d at 130. "The State's deliberate delays will be weighed heavily against it, but even negligence that causes delay will be weighed against the State." *Ross*, 8 Wn. App. 2d at 944. However, "even where continuances are

sought over the defendant's objection, delay caused by the defendant's counsel is charged against the defendant under the *Barker* balancing test if the continuances were sought in order to provide professional assistance in the defendant's interests."  *Ollivier*, 178 Wn.2d at 834.

In considering the defendant's assertion of their speedy trial right, "[a]lthough a defendant has no obligation to bring himself to trial, he does bear some responsibility in asserting his right." *State v. Sterling*, 23 Wn. App. 171, 177, 596 P.2d 1082 (1979).  "[T]he frequency and force of a defendant's objections should be taken into consideration, as well as the reasons why the defendant demands or does not demand a speedy trial."  *State v. Iniguez*, 167 Wn.2d 273, 295, 217 P.3d 768 (2009).  "Critically, an assertion of the constitutional right to a speedy trial is different from an assertion of the right to a remedy for a violation of that right."  *Nov*, 14 Wn. App. 2d at 133.  "An appropriate assertion of the constitutional right to a speedy trial encompasses more than a desire for dismissal on speedy trial grounds."  *Id.* at 133 n.18.

"The fourth *Barker* factor, prejudice to the defendant, is generally analyzed by assessing any effects on the interests protected by the right to a speedy trial: (1) prevention of a harsh pretrial detention, (2) minimization of the defendant's anxiety or worry, and (3) limitation or impairment of the defense."  *Nov*, 14 Wn. App. 2d at 134.  "In general, a defendant must show actual prejudice to establish a speedy trial right violation."  *Ross*, 8 Wn. App. 2d at 956.  "Although particularized showings of prejudice are not necessary when a delay is of a sufficient length that it causes a presumption of prejudice to arise, this presumption may be rebutted by the State establishing that the delay left the defense unimpaired."  *Nov*, 14 Wn. App. 2d at 134-35 (citation omitted).

b.    CrR 3.3 time for trial right

Even if there is no constitutional speedy trial violation, government mismanagement may be a basis for dismissing a case under CrR 8.3(b) if the mismanagement causes significant delay that impairs a defendant's CrR 3.3 time for trial right. *Teems*, 89 Wn. App. at 388. CrR 3.3 imposes a 60-day time for trial limit, but that clock resets when an attorney is disqualified, and the time for trial limit is extended when a trial court grants a continuance. CrR 3.3(c)(2)(vii), (e)(3).

"We review de novo whether the trial court violated CrR 3.3." *Hatt*, 11 Wn. App. 2d at 150. And "a trial court's grant or denial of a motion for continuance" that extends the CrR 3.3 time limit "will not be disturbed absent a showing of manifest abuse of discretion." *Campbell*, 103 Wn.2d at 14.

In *Campbell*, our Supreme Court held that a trial court did not abuse its discretion by continuing a case where the trial court "made a proper record of reasons for failure to comply with CrR 3.3 time limits" and found that the delay was due to the complexity and length of the case, not any fault of the prosecutor or defense counsel. *Id* at 14-15. In contrast, in *Teems*, the prosecutor waited 40 days after a mistrial ruling to refile charging documents, the prosecutor provided notice of the new charging documents only to the defendant's prior counsel, who had withdrawn from the case, and new counsel was appointed more than a month after charges were refiled with only 12 days left to prepare a felony defense. 89 Wn. App. at 389-90. The trial court dismissed the case under CrR 8.3(b) and Division Three affirmed because "the State caused delay though simple mismanagement of the case." *Id*. at 390.

c.     Constitutional right to a speedy trial not violated

In addressing the length of delay, this case is unlike *Teems*, where the delay was lengthy and an obvious product of the State's decisions to refile charges after significant delay. *Id*. at 389. Here, Rosenthal was without counsel from July 27 to August 3, about eight days, much shorter than the delay in *Teems*. *Id*. at 389-90. And the total time between his arrest and trial was about five months, far shorter than the years or decades of delay in other cases. *Ross*, 8 Wn. App. 2d at 942-43. Accordingly, this factor weighs against finding a constitutional violation.

We next consider the reasons for the delay. *Ollivier*, 178 Wn.2d at 827. Although there was a conflict of interest discovered with Rosenthal's second attorney, that conflict was because Rosenthal informed the second attorney that he intended to blame another person for a crime, and that other person was also a client of the second attorney. There is no allegation that the second attorney was deficient in representing Rosenthal, and it appears that the second attorney promptly sought to withdraw upon discovering the conflict. As for the delay between the second attorney's withdrawal and trial counsel's appearance, this delay stemmed from Rosenthal's criminal history and defense in this case producing conflicts with many of the attorneys in the pool of available public defense attorneys in the County and the uncontrollable fact that trial counsel was on a lengthy vacation when the public defense coordinator reached out to him about representing Rosenthal. Conflicts of interest and trial counsel being on vacation when appointed were not due to any party's actions and are, therefore, neutral. *See Nov*, 14 Wn. App. 2d at 130. There is also no allegation that the State failed to diligently prosecuted the case against Rosenthal. *Id*. And trial counsel's request for a continuance to effectively represent Rosenthal, weighs against finding a

violation even though Rosenthal objected. *Ollivier*, 178 Wn.2d at 834. Accordingly, this factor weighs against finding a constitutional speedy trial violation.

Third, with regard to the defendant's assertion of his right to a speedy trial, although Rosenthal repeatedly claimed that his speedy trial right was being violated, he primarily asserted his right to the remedy of dismissal. *Nov*, 14 Wn. App. 2d at 132 n.18. While this factor weights in favor of finding a speedy trial right violation, this factor does not amount to a speedy trial violation by itself. *Ollivier*, 178 Wn.2d at 827.

Finally, we must assess whether the delay prejudiced Rosenthal. *Id*. Rosenthal argues that he was prejudiced because he was forced "to choose between effective assistance of counsel and his right to a speedy trial." Br. of Appellant at 36. Trial was set for September before trial counsel was appointed, and trial counsel stated that he could not effectively represent Rosenthal in a September trial because of his other obligations. Even if trial counsel had been appointed the day that Rosenthal's second attorney withdrew, the situation would almost certainly have been the same: trial counsel would have missed at least two weeks of work on a preplanned vacation and trial counsel's other obligations precluding his ability to effectively represent Rosenthal in a September trial remained. Rosenthal does not establish that the eight days between the withdrawal of one attorney and the appointment of the next impacted trial counsel's effectiveness or impaired his defense. *Ross*, 8 Wn. App. 2d at 956; *Nov*, 14 Wn. App. 2d at 134-35. Thus, Rosenthal cannot demonstrate prejudice, and this factor weighs against finding a speedy trial violation. In weighing all of the *Barker* factors, Rosenthal does not show a violation of his constitutional right to a speedy trial.

d.      CrR 3.3 time for trial not violated

The same is true for Rosenthal's time for trial right under CrR 3.3.  The CrR 3.3 time for trial clock is properly reset or delayed when the trial court grants a request for a continuance as long as the granting of the continuance was not a manifest abuse of discretion.  *Campbell*, 103 Wn.2d at 14.

Here, like *Campbell*, no attorney's willful actions caused the delay that formed the basis for the continuance.  Rather, the continuance was necessary because Rosenthal's second attorney withdrew due to a conflict of interest, trial counsel had been on vacation when he was appointed, trial counsel had pre-existing scheduling obligations during the month of September, and the case had a significant amount of discovery that trial counsel needed to review.  The trial court's ruling granting the continuance was based on these reasons, which were not untenable.  *Kone*, 165 Wn. App. at 433.  As a result, the trial court did not abuse its discretion by granting the continuance and extending Rosenthal's CrR 3.3 time for trial deadline.

In sum, the delay in appointing Rosenthal counsel did not violate right to counsel, right to a speedy trial, or time for trial right.  Thus, the trial court did not abuse its discretion by denying Rosenthal's CrR 8.3 motion.

B.      SAG

Rosenthal raises multiple grounds for review in his SAG.  Rosenthal first claims that the trial court violated his rights to a speedy trial and effective assistance of counsel by denying the CrR 8.3 motion.  He asserts that the trial court should have dismissed the charges against him after

16

48 hours passed without appointed counsel. We need not address grounds already raised and argued by appellate counsel.

Next, Rosenthal claims that he was the subject of vindictive prosecution because he had a fugitive from justice case that was linked to this one. "'Prosecutorial vindictiveness occurs when the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights.'" *State v. Roy*, 147 Wn. App. 309, 317, 195 P.3d 967 (2008) (internal quotation marks omitted) (quoting *State v. Korum*, 157 Wn.2d 614, 627, 141 P.3d 13 (2006)), *review denied*, 165 Wn.2d 1051 (2009). The fugitive from justice case was related to events that occurred in Oregon, and the State dismissed that case at sentencing due to Rosenthal's lengthy incarceration in the present case. Rosenthal does not explain how these actions constitute prosecutorial vindictiveness. This claim fails.

Rosenthal also claims that he received ineffective assistance of counsel because his trial counsel did not rewrite his CrR 8.3 motion for him and did not move to disqualify the judge who presided over the CrR 8.3 hearing. To demonstrate ineffective assistance of counsel, a defendant must both show that defense counsel's representation was deficient (*i.e.,* counsel's representation fell below an objective standard of reasonableness based on consideration of all the circumstances) and that defense counsel's deficient representation prejudiced the defendant (*i.e.,* there is a reasonable probability that, except for counsel's errors, the result of the proceeding would have been different). *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251, 1256 (1995). Rosenthal does not show how rewriting the CrR 8.3 motion or disqualifying the judge would have altered the outcome of that proceeding, so he cannot demonstrate prejudice. This claim fails.

Finally, Rosenthal claims that his first attorney lied on the record about not having a conflict of interest. The details of Rosenthal's allegations about whether this attorney testified against him in a prior trial pertain to matters outside the record, precluding review on direct appeal. *McFarland*, 127 Wn.2d at 335. And the trial court allowed Rosenthal to substitute his first attorney and appointed new counsel within a day, so Rosenthal cannot demonstrate any prejudice. This claim fails.

In sum, none of the arguments in Rosenthal's SAG merit reversal.

CONCLUSION

We affirm Rosenthal's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, P.J.

We concur:

Glasgow, J.

Price, J.